## H. O'MAHONEY AND WIFE v. J. W. FLANAGAN·ET AL.

### Decided January 9, 1904.

**1.—Notice—Putting on Inquiry—Wife's Separate Estate—Consideration of Deed—Recitals.**

Where a deed executed by the grantors to their married daughter recited that the grantors "do give, transfer and convey" the land to her "in consideration of $300 paid us in hand at various times her marriage," etc. Held, that this was sufficient to put upon inquiry as to whether or not the land was the daughter's separate estate; and as such inquiry, if prosecuted with reasonable·diligence, would·have disclosed that the land was separate estate, such recitation·is held in law to be notice.

**2.—Same—Deed in Claim of Title—Presumption.**

That a subsequent purchaser of the land from the daughter's husband, after her death, did not read the deed to the daughter does not affect·the question, since he is conclusively presumed, such deed being in the chain of title and recorded, to have notice of its recitals.

**3.—Purchaser in Good·Faith—Improvements.**

It was not error for the charge to define a purchaser in good·faith, entitled to recover for the value of improvements placed by him on land, as "one who·not only supposes himself to be the true owner, but who is ignorant that his title is contested by a person claiming a better title,"—other parts of the charge correctly applying the law to the facts.

**4.—Same—Improvements and Rents—Offset.**

Where in trespass to try title the evidence shows the rental value of the land to be $125, and the value of improvements made thereon by defendant to be $125, and the verdict simply finds for the plaintiffs, it will be presumed that the jury offset the rents against the improvements.

Appeal from the District Court of Harrison. Tried below before Hon. Richard B. Levy.

*T. P. Young,* for appellants.

*F. H. Prendergast,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—This was an action of trespass to try title brought by appellees Cecil Flanagan, Hunter Flanagan and Annie May Flanagan, minors, by their next friend, J. W. Flanagan, against appellants, and in which the judgment was rendered for plaintiffs.

Both parties to the suit claim title under John T. Hunter and wife. On February 28, 1888, John T. Hunter and wife conveyed the property to Sally Flanagan, the mother of appellees. The deed is as follows: ·

"State of Texas, County of Harrison. Know all men by these presents that we, John T. Hunter and Ann M. Hunter, of Marshall, Harrison County, Texas, have this day and date sold, bargained and conveyed to our daughter, Sallie Flanagan, of Marshall, Harrison County, Texas, she being the wife of J. W. Flanagan, Jr., of Marshall, Harrison County, Texas, all of our right and title to a certain tract or parcel of land described as follows: One hundred and sixty acres of land, more or less, known as a part of the Henry Teel headright survey; we, John T. Hunter and Ann M. Hunter, bought said land from R. G. Hamil and wife; and now be it known that we, John T. Hunter and wife Ann M. Hunter, of State and county above mentioned, do give,

transfer and convey to our daughter, Sallie Flanagan, for the consideration of three hundred dollars paid us in hand at various times her marriage to J. W. Flanagan, Jr.; the land is known as the John T. Hunter farm, situated about 3½ miles northeast of Marshall, Texas; we convey all of and title to said Sallie Flanagan, our daughter, of said land which is now rented to Wm. Albright for the year 1888; Sallie Flanagan is to have all benefits derived from said land from this date on, as we, John T. Hunter and Ann M. Hunter, relinquish all claim after date of this deed; now be it known that said land has on it at present three negro cabins and two houses in the yard where our residence lately burned; the land and all these on from this date on belongs to our daughter, Sallie Flanagan, to hold and control and dispose of as she see proper. Now we, John T. Hunter and Ann M. Hunter, of Marshall, Harrison County, Texas, do bind ourselves to warrant and defend Sallie Flanagan in all claims that may arise legally in regard to the title to the above land; we give this warrantee deed to our daughter, Sallie Flanagan, of said county and State; now we sign our names and acknowledge our signature in presence of witness this the 28th Feby., 1888. Signed by John T. Hunter and Ann M. Hunter."

The court, on the issue of title, instructed a verdict for plaintiff. The issues as to rental value of land and damages, and of improvements made by defendants in good faith, were submitted to the jury. The jury returned a verdict for plaintiff for the land, but found nothing for rents and damages or for improvements. Defendants appeal.

*Opinion.*—Complaint is made of the action of the court in instructing a verdict for plaintiffs on the issue of title.

The evidence showed that at the time of the execution of the deed Sallie Flanagan was the wife of J. W. Flanagan, and that plaintiffs are their children. Sallie Flanagan died, and J. W. Flanagan subsequently married Mattie Flanagan. J. W. Flanagan and Mattie Flanagan sold the land to D. T. Noble and J. F. Bryant on the 18th day of December, 1895, by warranty deed, which was duly acknowledged and recorded, the consideration being part cash and their three notes each for $121.75, each payable to J. W. Flanagan or bearer, secured by a vendor's lien, and payable in one, two and three years respectively after date. D. T. Noble and J. F. Bryant conveyed the land to defendant Mrs. B. O'Mahoney for $387.50, the amount of these notes, in January, 1897, the consideration being the cancellation of these notes. Flanagan, in the spring of 1896, borrowed from Mrs. B. O'Mahoney $125, and deposited the three notes executed by D. T. Noble and J. F. Bryant as security therefor. When the first of the three notes matured Noble and Bryant refused to pay it, and stated they would not pay the notes. Thereupon the defendant H. O'Mahoney procured J. W. Flanagan to write to Noble and Bryant, requesting them to convey the land to Mrs. B. O'Mahoney in satisfaction of the notes, which they accordingly did.

There was undisputed evidence that the consideration, $300, recited

in the deed from John T. Hunter and Ann M. Hunter to Sallie Flanagan, was paid out of the separate estate of Sallie Flanagan, and that it was the intention of the parties to make the land her separate property.

Neither H. O'Mahoney nor Mrs. B. O'Mahoney had any actual notice when the land was conveyed to her of the title of plaintiffs. They did know that J. W. Flanagan had been twice married, and that he had children by his first wife at the time Mrs. O'Mahoney loaned Flanagan the money and at the time the land was conveyed to her.

The question presented is, was the recitation in the deed to Sallie Flanagan sufficient to put a reasonably prudent person upon inquiry as to whether the land was community or her separate property. The recitation referred to reads: "Now be it known that we, John T. Hunter and wife Ann M. Hunter, of State and county above mentioned, do give, transfer and convey to our daughter, Sallie Flanagan, for the consideration of three hundred dollars paid us in hand at various times her marriage to J. W. Flanagan, Jr., the land," etc. It will be noted that the conveyance is by John T. Hunter and wife to their daughter, Sallie Flanagan. It used the words, "give, transfer and convey." It further specifies the consideration of $300 "paid us in hand at various times her marriage." There seems to be a word omitted between the words "times" and "her" in this recitation. Either the word "before" or "since" would supply the omission. If the work "before" was omitted and the recitation should read "paid us in hand at various times before her marriage," the deed upon its face would make the land her separate property. If the word "since" should be supplied, then it would show that the consideration was paid since marriage, and the land would appear to be community property.

The facts recited in the deed were sufficient to put a purchaser upon inquiry as to whether the land was the separate property of Mrs. Sallie Flanagan or the community property of herself and husband. Whatever is sufficient to put a purchaser upon inquiry, which, if prosecuted with ordinary diligence, will disclose the true condition of the title, is held in law to be notice. Wethered v. Boone, 17 Texas, 150; Bacon v. O'Connor, 25 Texas, 226, 227; Sickles v. White, 66 Texas, 179; Webb, Record of Title, sec. 223.

There is no contention that inquiry would not have disclosed the true condition of the title. The fact that appellee nor her husband had read the deed from Hunter and wife to Mrs. Sallie Flanagan does not affect the question. This deed was in her chain of title and recorded, and she is conclusively presumed to have notice of its recitals. Bryan v. Crump, 55 Texas, 1; Renick v. Dawson, 55 Texas, 102; Caruth v. Grigsby, 57 Texas, 259.

We conclude that the defendant, under the facts, was not a good faith purchaser of the land, and that so far as the title is concerned there was no error in instructing a verdict for plaintiffs.

The fourth assignment complains of the charge of the court in defining a purchaser in good faith as "one who not only supposes himself

to be the true owner, but who is ignorant that his title is contested by a person claiming a better title. A possessor in good faith will be entitled to compensation for the permanent and valuable improvements he has made upon the land while so in possession, though it should turn out his title is defective, or that another has a superior title." This charge announced a general rule, and is correct. Other parts of the charge correctly applied the law to the facts.

It was shown, in addition to the facts recited, that appellant had made improvements upon the land of the value of $125. It was also shown that the rental value of the land and damages was $125. The jury did not find anything for improvements, or for the rental value and damages to the land. The value of the rents and damages being the same as the value of the improvements, it may be inferred the jury set off one against the other. There is no evidence that appellee made any investigation as to the validity of the title under which Mrs. O'Mahoney claimed, or that she had consulted an attorney in reference to the same, prior to her purchase.

The charge as a whole fairly submitted the issue of improvements in good faith, and there was no error in refusing the special charge, the refusal of which is made the ground of the fifth assignment of error.

Finding no error in the record the judgment is affirmed.

*Affirmed.*