## GULF PIPE LINE CO. v. WARREN et al.
### No. 2600.

Court of Civil Appeals of Texas. El Paso.
Dec. 31, 1931.

Rehearing Denied Jan. 28, 1932.

John E. Green, Jr., and Harry Holmes, both of Houston, for appellant.

John B. Warren, of Houston, H. M. Kinard and E. L. Reid, both of Orange, and Oswald S. Parker, of Beaumont, for appellees.

PELPHREY, C. J.

On December 23, 1919, K. Kishi and I. Lang executed and delivered to the Gulf Production Company an oil and mineral lease covering a tract of land in the southeast corner of the James Dyson league in Orange county, Tex., here known as Gulf Production Company lease "A," and on March 12, 1920, executed another mineral lease on 20 acres out of the James Dyson league known as lease "B."

Included within the lands described in leases A and B was 20 acres operated by the Amerada Petroleum Corporation, known as "Amerada 20 acres."

In December, 1920, Mose Granger, Joe Granger, Mary Scales, joined by her husband J. A. Scales, Lona Patillo, joined by her husband Harvey Patillo, Millie Caron, joined by her husband Emile Caron, Frank Granger, C. C. Granger, W. R. Granger, Albert Granger, Aladin Granger, Lessie Walker, joined by her husband G. W. Walker, and Sarah Jane Granger, a feme sole, individually, and 'as guardian of the persons and estate of John Granger, Tresimond Granger, Violet Granger, Mary Granger, and Elinor Granger, minors, executed a power of attorney to John B. Warren, coupled with a one-half interest in 275 acres of land out of the southeast corner of the James Dyson survey. The parties enumerated being the heirs of Tresimond Granger, deceased, through whom they claimed title to the land.

At the time of the execution of the power of attorney, there existed a dispute as to the location of the boundary line between the James and William Dyson surveys, and a suit was pending in the United States District Court for the Eastern District of Texas, between K. Kishi and I. Lang, and their lessee, Gulf Production Company on one side, and Oscar Chesson and the Humble Oil & Refining Company, his lessee, on the other. The dispute involved 10⅔ acres of land which is here known as the 10⅔-acre tract. Warren, by virtue of his powers of attorney, filed suit in the district court of Orange county, against K. Kishi, I. Lang, Gulf Production Company, and others, for the title and possession of the 275 acres mentioned in his power of attorney.

On January 19, 1922, John B. Warren, for himself and as attorney in fact for the Granger heirs, made an agreement of settlement with Gulf Production Company, K. Kishi, and I. Lang.

In the agreement Gulf Production Company, K. Kishi, and I. Lang agreed to deliver to John B. Warren, for the parties as their interest might appear, one ninety-sixth of all oil produced and saved and not used in operations from leases A and B, Gulf Production Company to deliver one-half, Kishi three-fourths, and I. Lang one-fourth. The delivery to be made once each month as taken from the ground on the 15th day of each month following month of production, in the pipe lines of the producing company, or in pipe lines serving the field. As to the 5-acre tract operated by the Humble Oil & Refining Company, Gulf Production Company should pay nothing, but Kishi and Lang to pay to Warren and Granger heirs 1/192 of all oil produced and saved and not used in operations the same as other payments were to be made. As to the 10⅔-acre tract, in the event Gulf Production Company, Kishi, and Lang prevailed in their suit, then they were to pay to Warren and the Granger heirs one-fortieth of the oil produced and saved therefrom, Gulf Production Company to pay one-eightieth, Kishi to pay three-fourths, and Lang to pay one-fourth of the remaining one-eightieth. Payments to be made in the same manner as on leases A and B.

The agreement further provided that in case the suit involving the 10⅔-acre tract was settled or compromised, no payments were to be paid for oil therefrom to Warren and the Granger heirs.

The part of the agreement providing for the delivery of the oil to Warren provided that he should procure authority from the Granger heirs to receipt for their portion of the oil. This agreement was ratified by the same parties who executed the power of attorney to Warren.

Subsequently, the Gulf Production Company, Kishi, Lang, and Warren, for himself and as attorney in fact for the Granger heirs, executed division orders, or contracts, with the Gulf Pipe Line Company, whereby the oil was to be run into its pipe lines on leases A and B and the Amerada 20 acres to the credit of the parties therein mentioned.

The interest due Warren as attorney in fact for Sarah Jane Granger, guardian of her minor children, John, Tresimond, Violet, Mary, and Aladin, being marked "(Hold)," these orders contained the following: "The undersigned agree in case of any adverse claim of title to the oil run hereunder, or any part thereof, or to the land from which it is run, to furnish to the Gulf Pipe Line Company satisfactory evidence of title, or in case of failure to do so, to furnish satisfactory indemnity bond on reasonable demand against such claim or claims and that the Gulf Pipe Line Company may retain the purchase price of the oil until such bond shall be furnished, or until the dispute as to ownership is settled, so as to relieve the company from all liability for oil received."

Lessie Walker, Aladin Granger, W. R. Granger, and the five minors, John, Tresimond, Violet, Mary, and Elinor Granger, were the children of John Granger, a son of Tresimond Granger, and Sarah Jane Granger. John Granger, one of the minors, died in 1924, and his interest was inherited by his mother and brothers and sisters.

Later John B. Warren and J. A. Conn purchased the interests of Frank Granger, Joe Granger, and Lona Patillo, also took conveyances from Albert Granger, C. C. Granger, and Lessie Walker for the interest which they inherited from John Granger, the deceased minor. Warren, Conn, Albert Granger, C. C. Granger, and Lessie Walker executed transfer orders to the Gulf Pipe Line Company in which it was provided that a portion of the interest conveyed should be held by the pipe line company.

On July 29, 1926, John B. Warren filed this suit against Gulf Production Company and the Gulf Pipe Line Company for 50 per cent.

of one-half of one-seventh of one ninety-sixth of all the oil produced from leases A and B and the Amerada 20 acres, alleged to be due him under the settlement agreement with the Gulf Production Company, K. Kishi, and I. Lang.

He alleged that the Gulf Production Company had sold the oil to the Gulf Pipe Line Company and that both of them, by using the same as their own, were guilty of its conversion.

On September 3, 1926, Gulf Pipe Line Company and Gulf Production Company filed a joint answer, containing a plea in abatement of another suit pending, general demurrer, special exceptions, general denial, and a special answer alleging that Warren had received all the oil he was entitled to under the contract alleged except the interest claimed by him under his powers of attorney from the estates of the minors John, Violet, Mary, Tresimond, and Elinor Granger which interest defendants were ready and willing to pay whenever the probate court of Orange county in the guardianship of said minors authorized the sale and conveyance to Warren, which authority he had by the settlement agreement agreed to furnish and had failed and refused to do. That Warren, for himself and as attorney in fact for the Granger heirs, had executed to the Gulf Pipe Line Company three division orders by the term of which he had authorized said Gulf Pipe Line Company to receive and purchase the oils due as royalty, and that in case of adverse claim of title to such oils so run or any part thereof, to furnish the Gulf Pipe Line Company satisfactory evidence of his title; or, in case of failure to do so, to furnish satisfactory indemnity bond and that Gulf Pipe Line Company might retain' the proceeds thereof until such bond should be furnished or the dispute settled. They further pleaded that the oils had been delivered to the Gulf Pipe Line Company under the division orders and with the understanding that the interest coming to Warren from the estate of the minors was to be held until the pipe line company was furnished with an order of the probate court, authorizing him to receipt therefor. They also alleged that the pipe line company had in its hands $188.30, which represented one-half of the money due the estate of the minors, which it was ready and willing to pay upon receipt of proper orders from the probate court authorizing the transfer of the interest to Warren.

On November 8, 1927, Warren by amendment to his petition enlarged his claim to include an interest claimed to have been purchased by him and J. A. Conn, from Frank Granger, Joe Granger, Lona Patillo, Albert Granger, C. C. Granger, and Lessie Walker.

On the same day, Conn intervened as a plaintiff in the cause, setting up a claim for an interest which he alleged he and Warren had purchased from the above heirs, and adopted the first amended petition of Warren.

The same date Fowler and Conn filed a petition in intervention for Sarah Jane Granger, guardian of the minors, and adopted Warren's petition.

The authority of Fowler and Conn to represent her was later questioned.

Gulf Production and Gulf Pipe Line Company, on this date, filed their second amended answer, and after setting up the provisions of the division orders alleged that the Granger heirs had filed a suit for the cancellation of the powers of attorney, under which Warren was claiming an interest in the oils and were asserting an adverse claim thereto, and asked that they be impleaded and required to set up their claims in the suit.

Gulf Pipe Line also filed a separate answer asserting that the claims of Warren and the Granger heirs constituted a single claim against it for the proceeds of the oil; that it claimed no interest in the funds; was ready and willing to pay over same to those found to be entitled thereto; tendered payment into the registry of the court or to those whom the court might find entitled thereto. It prayed that it go hence without day, recover its costs and reasonable attorney's fees, which it alleged to be $500.

Warren, on March 15, 1928, filed his supplemental petition in which, by demurrer and exceptions, he attempted to prevent the Granger heirs from being impleaded in the case and enlarged his demand to include one-half of one-half of one-seventh of one-eightieth of the oil from the 10⅔-acre tract.

The Granger heirs filed a suit against Warren et al. in the district court of Orange county, to cancel his powers of attorney and the conveyances made to him and Conn. An injunction was issued restraining Warren from prosecuting this suit. The Supreme Court, however, by writ of mandamus, set aside the orders of the Orange county district court and ordered the court to proceed with the trial of this cause. With the Granger heirs being parties, the case was tried before the court and judgment was rendered in favor of Warren and against Gulf Pipe Line Company for $2,435.16 and $97.16 interest; in favor of J. A. Conn for $602.89 and $28 interest; and in favor of Sarah Jane Granger, as guardian of the minors, for $204.43, allowing Warren and Conn interest up to March 8, 1928, on the portions of the fund for which judgment was rendered. The court decreed that the Gulf Production Company go hence without day, with its costs, and refused to allow the Gulf Pipe Line Company attorney's fees and taxed it with all costs except those incurred in making Gulf Production Company and Humble Pipe Line Company parties.

Gulf Pipe Line Company has perfected an appeal.

### Opinion.

The first question which presents itself for consideration is whether, under the facts, appellant was a stakeholder and entitled to be protected as such by the trial court. Appellant contends that it holding the proceeds of the oil under a contract executed by Warren, as attorney in fact for the Granger heirs, conditioned that in case of adverse claim, it should have the right to retain such proceeds until it was furnished with satisfactory indemnity bond, upon the Granger heirs repudiating the acts of their attorney, it became a stakeholder as between Warren and the heirs; that it having disclaimed any interest in the fund and having tendered payment to whomsoever the same was due, and having pleaded that the claims of the parties was a single demand against it, was entitled, in a suit by Warren, to implead the heirs, to recover its costs and reasonable attorney's fees, and was not chargeable with interest on the funds while they were held by it.

Appellees Warren and Conn counter with the contentions: (1) That appellant, having disclaimed any interest in the fund and having requested the court to determine their ownership, has no such interest as will entitle it to appeal; (2) that appellant was a debtor of Warren and Conn and therefore could not be a stakeholder; (3) that the undisputed evidence showing an agreement between appellant, Gulf Production Company, and the Granger Heirs, to litigate with Warren and Conn, their right to the money and royalties involved in the suit of Mose Granger et al v. Gulf Production Company, No. 121,-439, and the moneys and royalties here involved, and their right to prosecute this suit, the court properly refused to protect it as a stakeholder; and (4) that the allowance of costs and attorney's fees to a stakeholder is a matter in the discretion of the trial court, and its action will not be reviewed on an appeal unless there is an abuse of such discretion.

The following appears in the decree of the court: "The prayer of the Gulf Pipe Line Company that it be adjudged to be a stakeholder and awarded its attorney's fees, is hereby denied."

There are no findings of fact or conclusions of law in the record, and we have no way of knowing upon what facts the court based that portion of its judgment.

■ It is a well-established rule that a party seeking the remedy of interpleader must act in good faith, and must occupy an impartial position as to the issue he seeks to have litigated.

This suit was filed July 26, 1926, and was not tried until the 27th day of October, 1930, and the record reveals that a great deal of this delay was brought about by the tactics employed by appellant.

In their first answer filed by the Gulf Production Company and appellant they took the position of contesting defendants, rather than that of a stakeholder, and all through the pleadings there appears a resistance to the demands of Warren and Conn and an effort to delay a trial of the suit rather than a position consistent with that which a disinterested stakeholder should assume.

They not only raised questions by their exceptions to Warren's petition which were, if they were only a stakeholder, pertinent to the issues between Warren and the heirs, but at one stage in the proceedings demanded a jury.

■■ The remedy of interpleader is an equitable one, based on the theory that conflicting claimants should litigate the matter among themselves without involving the stakeholder in their dispute. 33 Cor. Jur. p. 419; Nixon v. New York Life Ins. Co., 100 Tex. 250, 98 S. W. 380, 99 S. W. 403; Williams v. Simon (Tex. Civ. App.) 235 S. W. 257. And when a party comes into court showing a disposition to delay the trial of the issues between the claimants and conducts himself in such manner as to show that he is encouraging one of the parties in its claim and hindering the other party from having an adjudication of the question involved, he cannot then claim the protection accorded by the law to a stakeholder.

■ We think the facts here were sufficient to justify the trial court in concluding that appellant was not occupying the position of a disinterested stakeholder, and the assignments attacking the court's refusal to allow appellants its costs and reasonable attorney's fees are therefore overruled.

■ Appellant's second proposition is: "The contract between the Gulf Pipe Line Company and John B. Warren, attorney-in-fact for the Granger heirs, under which said funds came into the hands of the Gulf Pipe Line Company, provided that it should hold said funds in case of adverse claim until such claims were determined, or, until it should be furnished with satisfactory indemnity bond, and it was not liable for interest upon such funds while so held, the claimants failing or refusing to execute an indemnity bond to secure the same."

The provision of the division orders referred to reads: "The undersigned agree in case of adverse claim of title to the oil run hereunder, or any part thereof, or to the land from which it is run, to furnish the Gulf Pipe Line Company satisfactory evidence of title, or, in case of failure to do so, to furnish satisfactory indemnity bond, on reasonable

demand, against such adverse claim or claims; and that the Gulf Pipe Line Company may retain the purchase price of the oil until such bond shall be furnished or until the dispute as to ownership is settled, so as to relieve the company from all liability for oil received."

The court in its judgment allowed Warren and Conn interest on the monthly accruals thereof to March 8, 1928.

Harry Holmes, who acted as attorney for appellant and the Gulf Production Company during a part of the proceedings, testified: "In March, 1928, I was employed by the Gulf Production Company and the Gulf Pipe Line Company to represent them in this case. Prior to that time the case had been handled by their legal department. Upon being employed in the case I found that Mr. Warren was the plaintiff and the Gulf Production Company and the Gulf Pipe Line Company were defendants. * * * At that time I found that the Granger Heirs were asserting a claim against the funds and I met Mr. John Warren and told him that I had been employed in the case on account of some of the members of the legal department being too busy to attend to the cause, and I told him that if he would execute a bond to the Gulf Pipe Line Company in accordance with the division orders that they had signed that I would advise the Gulf Production Company, and I was authorized to advise him that if he would execute the bond that they would give him the money. That if he didn't do that I was going to bring these parties that were asserting a claim to the money into the case to assert their own claim. He said he couldn't give any bond, and I filed an amended pleading making all of the Granger heirs parties to this suit. * * *"

Mr. Warren also testifies to the conversation and admits that he refused to execute the bond. On March the 8th appellant filed its second amended answer and bill of interpleader, in which it tendered the fund into the registry of the court or to whomever the court might find entitled to it.

While there are some allegations in former pleadings to the effect that an indemnity bond had been demanded and refused, from the evidence we find that the demand made by Mr. Holmes was the first one made of Warren and Conn.

It is our opinion that under the provision of the division orders, above quoted, before appellant could escape the payment of interest on the funds withheld, it would be necessary to show the existence of an adverse claim and that an indemnity bond had been demanded and refused.

If we be correct in this, then appellant not being a stakeholder and having made no demand upon Warren until March, 1928, would be liable for interest to that time.

What has been here said will apply with equal force to the contentions of appellees Warren and Conn under their fifth cross-assignment of error. They had contracted with appellant that in the advent of an adverse claim to the oil run under the contract, appellant might retain the proceeds thereof, until an indemnity bond had been furnished it, upon reasonable demand.

■ It may be true that such demand was not made until after this suit was filed, but that would not, in our opinion, change the rights of the parties as to interest on the funds. Under the contract appellant, upon the appearance of an adverse claim, had the right, under the contract, to retain the fund and demand a bond, and having that right it should not be liable for interest on the funds, after such bond had been demanded and refused, regardless of when the demand and refusal occurred. Appellee's cross-assignment attacking the judgment on this score is overruled.

Appellee Warren's first cross-assignment reads: "The judgment is contrary to law and the undisputed evidence in this: the undisputed evidence showed said appellee had to his credit the sum of $2639.50, the proceeds of oil sold by said appellee to the appellant up to October 1, 1930, and had a good title to the oil so sold. The court erred in awarding to Sarah Jane Granger, Guardian of Violet and Tresimond Granger, minors, any part thereof, but should have rendered judgment in favor of said appellee for the full amount shown to be due with 6% interest on the monthly accruals aggregating such sum up to the time of judgment.".

■ Warren has taken no appeal in this case, neither has Sarah Jane Granger, Guardian of the minors; therefore, this court has no jurisdiction to consider the above cross-assignment, it being against Warren's co-appellee. 3 Tex. Jur. § 609; Wright v. Bott (Tex. Civ. App.) 163 S. W. 360; Slaughter v. Morton (Tex. Civ. App.) 195 S. W. 897 (writ of error refused); Galveston Hotel Co. v. Goggan (Tex. Civ. App.) 253 S. W. 694; Randle v. Naugle (Tex. Civ. App.) 299 S. W. 297; Clayton v. Bridgeport Machine Co. (Tex. Civ. App.) 33 S.W.(2d) 787.

Finding no reversible error in the record, the judgment is affirmed.