**LUCKEL et al. v. BARNSDALL OIL CO. et al.**

No. 4460.

Court of Civil Appeals of Texas. Texarkana.

June 14, 1934.

Rehearing Denied July 19, 1934.

Wynne & Wynne and W. A. Ray, all of Longview, and Vinson, Elkins, Sweeton & Weems and J. Hart Willis, all of Houston, for appellants.

Bramlette & Meredith, of Longview, F. V. Phipps and M. D. Kirk, both of Tulsa, Okl., Williams, Lee, Sears & Kennerly, of Houston, and Wm. Hodges, of Texarkana, for appellees.

SELLERS, Justice.

On December 18, 1918, J. G. McGrede purchased from H. C. McGrede 220 acres of land, less ½ acre out of the south end thereof known as the "graveyard lot," out of the Dolores Sanches H. R. survey in Gregg county, Tex. He was married at the time he acquired said land and had been married for some years prior thereto to Quessie McGrede. Of

this marriage the following children were born: G. E. McGrede, Lodella McGrede, Quessie McGrede, J. R. McGrede, Walter McGrede, and J. H. McGrede. Immediately after the purchase of said land, J. G. McGrede and his wife moved on said land and continuously occupied and used the same as their homestead until the death of Mrs. McGrede, which occurred in June, 1922. After her death, J. G. McGrede and some of his children continued to live on said land and to use the same as their homestead until the spring of 1931.

By virtue of an agreement with his father, G. E. McGrede, the eldest son, remained out of school, assisted his father in working said farm and paying the balance due thereon. For his service his father agreed to give him a deed to 36 acres out of the southeast corner of said tract. This agreement was made prior to the death of Mrs. McGrede, but the deed was not executed by J. G. McGrede and delivered to G. E. McGrede until June 27, 1925, which was about three years after her death. The trial court held this agreement constituted an obligation against the community estate of J. G. McGrede and his wife, and not an obligation against the interest of J. G. McGrede solely. No complaint was made by any of the parties as to said ruling.

On May 9, 1930, J. G. McGrede, while a widower, executed and delivered to B. A. Skipper an oil, gas, and mineral lease covering the 220-acre tract, less the ½-acre cemetery lot and the 36-acre tract deeded to G. E. McGrede. At the time of the execution of said lease, J. G. McGrede and two of his children were living together in a house on said farm, using and cultivating the major portion of it; the remaining portion not cultivated by them being cultivated by tenants of J. G. McGrede. When Skipper obtained the lease he was well acquainted with the J. G. McGrede family, knew of Mrs. McGrede's death, that she left surviving her a large family of children, and that at least one of the children was living in the home with his father.

On September 11, 1930, Skipper assigned said lease to W. W. Lechner. Said assignment was taken in the name of Lechner, but Ray E. Hubbard had an interest therein. At the time of the delivery of said assignment to Lechner and Hubbard, Skipper advised them of the condition of the title thereto, told them that J. G. McGrede had been married, that his wife was dead and had left children surviving her. They accepted the assignment knowing the title was questionable.

On January 5, 1931, Lechner assigned to appellee Barnsdall Oil Company 84 acres of said lease off the west side of said 220 acres, and on January 24, 1931, he assigned to Houston Oil Company 25 acres of said lease described as follows: "Beginning at the S. E. corner of the West 84 acres of said tract described in assignment of lease to Barnsdall Oil Company dated January 5, 1931; thence East with S. line of said 220-acre tract to S. W. corner of G. E. McGrede's 36-acre tract; thence North a sufficient distance so that by running West to the East line of said Barnsdall 84-acre tract and South with the said Barnsdall 84-acre tract to place of beginning will contain 25 acres of land."

On January 27, 1931, Lechner executed and delivered to G. E. Hubbard an assignment covering the remaining acreage of the J. G. McGrede tract. On February 14, 1931, Lodella McGrede, having had her disabilities removed, executed and delivered to G. E. Hubbard an oil and gas and mineral lease covering her undivided interest in and to said 220-acre tract, less the 36 acres deeded by her father to G. E. McGrede. On February 11, 1931, all the other McGrede children except Walter executed and delivered to G. E. Hubbard an oil, gas, and mineral lease covering their undivided interests in said 220 acres, less the 36-acre tract of G. E. McGrede.

On March 28, 1931, J. G. McGrede having heretofore been appointed guardian of his minor son, Walter, under proper probate court orders, executed and delivered to F. L. Luckel an oil, gas, and mineral lease covering the undivided interest of said minor in and to the 220 acres, less the 36 acres of G. E. McGrede. After obtaining the conveyances from the McGrede children, G. E. Hubbard and Luckel asserted a claim to an undivided one-half interest in the 84-acre tract assigned to appellee Barnsdall Oil Company, and an undivided one-half interest in the 25-acre tract assigned to Houston Oil Company. Appellee Barnsdall Oil Company therefore brought this suit in the district court of Gregg county against appellants and others to remove cloud from its title in and to the mineral estate in the 84 acres described in its assignment.

Luckel was not made a party in appellee's original petition, but, by permission of the court, intervened, setting up his alleged interest in the two tracts in controversy. He was afterwards made a defendant in appellee's amended petition. The only questions submitted to the jury were whether appellee Barnsdall Oil Company and the Houston Oil Company were innocent purchasers for value without notice of appellants' respective lease interest. The jury found against the Houston Oil Company on said issue, but found that ap-

pellee Barnsdall Oil Company was an innocent purchaser of its lease of said 84 acres. Judgment was entered accordingly.

Appellants have perfected an appeal only from that part of the judgment awarding title to the 84-acre mineral estate to the Barnsdall Oil Company. Their contentions are: First, the uncontroverted evidence showed the appellee Barnsdall Oil Company, before it paid for its assignment covering said 84 acres of land, had knowledge of facts which in law constitute notice to it of the existence of the McGrede children and of their interest in said land; and therefore the court should have granted their motion for an instructed verdict. Second, if appellants were not entitled to an instructed verdict, the court erred in overruling their amended motion for new trial because the verdict of the jury and the judgment of the court are not supported by the law and the evidence, but are contrary to the overwhelming preponderance of the evidence.

■ These questions are predicated upon proper assignments of error. The Houston Oil Company filed an amended motion for new trial assigning numerous errors committed by the court in rendering judgment against it in favor of appellants. Said motion was overruled, to which action it duly excepted and gave notice of appeal; but it did not perfect its appeal by filing an appeal bond within the time required by law. It was made an obligee in the bonds filed by appellants, and by reason thereof it unquestionably has the right to appear here by a brief and insist upon an affirmance of the judgment in favor of appellee Barnsdall Oil Company, which is the only part of the judgment before this court. However, the mere fact that it is named, along with the appellee Barnsdall Oil Company, as an obligee in the appeal bonds filed by appellants, would not confer upon this court jurisdiction to consider and review its assignments of error relating to the judgment against it, as from the record it appears that it perfected no appeal from said judgment.

■■ It is well settled in this state that a party may appeal from a portion of a final judgment which is distinct and severable, permitting the remainder of the judgment to become final. Slaughter v. Texas Life Ins. Co. (Tex. Civ. App.) 211 S. W. 350; 3 Tex. Jur. § 66, p. 131. It is likewise well established that where the judgment is divisible and severable, and an appeal as to a divisible portion thereof not affecting the interest of one of the appellees is presented, if such appellee does not perfect an appeal from the portion of the judgment affecting his interest by giving notice of appeal and executing an appeal bond, his assignments attacking the judgment against him and in favor of appellant cannot be considered. Wright v. Bott (Tex. Civ. App.) 163 S. W. 360; Gulf Pipe Line Co. v. Warren (Tex. Civ. App.) 45 S.W.(2d) 719; Booth v. Uvalde Rock & Asphalt Co. (Tex. Civ. App.) 296 S. W. 345; Hunt v. Garrett (Tex. Civ. App.) 275 S. W. 96; Texas & N. O. Ry. Co. v. Skinner, 4 Tex. Civ. App. 661, 23 S. W. 1001; Hoover v. Kearbey, 25 Tex. Civ. App. 71, 60 S. W. 782, and Munoz v. Brassel (Tex. Civ. App.) 108 S. W. 417.

Appellants object to our considering the assignments of the Houston Oil Company contained in its brief which complain of errors affecting the judgment rendered against it and have moved to strike its brief. The judgment rendered in favor of appellee Barnsdall Oil Company, from which appeal was perfected, is divisible, separate, and distinct from the judgment rendered against Houston Oil Company, and as the Houston Oil Company did not perfect its appeal by seasonably filing its appeal bond, it is believed that we are without jurisdiction to review the alleged errors set out in its brief as to the judgment awarded against it.

■ We come now to the consideration of the questions urged by appellants against the validity of the judgment in favor of appellee Barnsdall Oil Company. When all parties had closed their evidence, the record discloses that appellants filed motions for an instructed verdict as to said appellee which were overruled and exceptions taken. Upon return of the verdict they also filed motions for judgment non obstante veredicto, which motions were likewise overruled, to which exceptions were taken. Appellants contend that the court erred in overruling said motions because the uncontroverted evidence shows that said appellee, before paying for its assignment, had knowledge of facts which in law were sufficient to put an ordinarily prudent person on inquiry, which, if pursued, would have disclosed to said appellee the existence of the McGrede children and their interest in said land, and as appellee failed to make any inquiry at all, it was by law charged with notice of all the facts such inquiry reasonably and diligently made would have revealed. The record shows that said appellee, Barnsdall Oil Company, had in its possession, just prior to its payment for its assignment, a certificate of title requested by it, a sworn statement of J. G. McGrede in answer to certain questions relating to the title to said property,

and a photostatic copy of the original lease executed by J. G. McGrede to Skipper. These documents were delivered to said company's attorney whose duty it was to pass upon the title and to close the trade. The certificate of title, among other things, contained the following statement: "That said above referred to 184 acres (which was the 220 acres less 36 acres deeded to G. E. McGrede) appears to be free and clear from all liens and save and except the following: oil and gas lease from J. G. McGrede and wife to B. A. Skipper, dated May 9, 1930, recorded in Book 4, p. 389; term ten years. The above assigned to W. W. Lechner under assignment dated September 11, 1930, and recorded in Book 66, p. 361." A photostatic copy of the original lease to Skipper was delivered to the attorney for said appellee at the same time the statement of title and questionnaire were delivered. The original lease was signed only by J. G. McGrede and in it he was represented to be a single man. In fact, Mrs. McGrede was dead in 1930, and did not join in the execution of the Skipper lease. But said appellee's attorney did not know this at the time he accepted the title to said lease. But were not these conflicting statements sufficient to excite inquiry? The certificate of title represented J. G. McGrede to be a married man at the time he executed the lease and the lease itself represented him to be a single man. If any inquiry had been made, it would have disclosed the fact that McGrede had been married, the existence of his children, and the land in controversy was the community property of himself and wife. Moreover, in the questionnaire or affidavit of possession, J. G. McGrede made affidavit that the property covered by said appellee's assignment was homestead property. He also swore that said property was not acquired with funds or the proceeds of the sale of property owned either by the husband or wife before marriage. He further swore that the property was not acquired by the lessor or his or her wife or husband by gift, devise, or descent. Unquestionably said appellee before paying for said assignment had notice that J. G. McGrede had been a married man and that the property covered by its assignment was a homestead and not the separate property of himself or wife. It also had constructive notice that J. G. McGrede had children, in that the description of its assignment covered the 220-acre tract, less a ½-acre graveyard lot and the 36-acre tract deeded to G. E. McGrede. Said appellee's attorney testified that in order to ascertain the acreage the company was getting by its assignment, it would have been necessary to go to the record and inspect the deed to G. E. McGrede. This deed would have disclosed that G. E. McGrede was the son of J. G. McGrede. Under the undisputed evidence the foregoing facts were known to the attorney of said appellee before he paid for the assignment. The testimony also showed that said appellee made no kind or character of investigation or inquiry with reference to the title to the property it was purchasing. Lechner and Hubbard would not agree to furnish an abstract of title. Said appellee agreed to take the lease "as it was," and to take the chance on the title. We are of the opinion that the above state of facts was sufficient as a matter of law to have put said appellee on inquiry, and as it failed to make any inquiry, it was charged with notice of all the facts an inquiry would have disclosed. If any kind of inquiry had been made, it would have disclosed that the property in question was the community property of J. G. McGrede and his deceased wife; that there were children of said marriage; and that they had a one-half interest in said property. Hill v. Moore, 85 Tex. 335, 19 S. W. 162; Randolph v. Junker, 1 Tex. Civ. App. 517, 21 S. W. 551; Willis v. Gay, 48 Tex. 463, 26 Am. Rep. 328; John v. Battle, 58 Tex. 591; Hines v. Perry, 25 Tex. 443; O'Mahoney v. Flanagan, 34 Tex. Civ. App. 244, 78 S. W. 245, 246; Sickles v. White, 66 Tex. 178, 17 S. W. 543; Wethered's Adm'r v. Boon, 17 Tex. 143; Mayor v. Breeding (Tex. Civ. App.) 24 S.W.(2d) 542; LaBrie v. Cartwright, 55 Tex. Civ. App. 144, 118 S. W. 785.

In the case of O'Mahoney v. Flanagan, supra, the rule which has been universally followed in this state was thus stated: "Whatever is sufficient to put a purchaser upon inquiry, which, if prosecuted with ordinary diligence, will disclose the true condition of the title, is held, in law, to be notice." In Wethered's Adm'r v. Boon, the Supreme Court announced the general doctrine as follows: "The general doctrine is, that whatever puts a party upon an inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding."

Reasonable minds cannot differ as to the effect of the knowledge of the facts which said appellee's attorney had before paying for said assignment would have upon an ordinarily prudent person. Said attorney had notice of sufficient facts to put him upon inquiry, and as he made no inquiry, the appellee is charged with notice of all the facts such an inquiry would have revealed. In the light of

the authorities and the record in this case, this issue should not have been submitted to the jury.

Said appellee contends further, however, that the judgment should be sustained on the ground of equitable partition. It asserts that Lechner effected a partition of the mineral estate in and to the 184 acres of land owned in cotenancy by him and the McGrede children when he executed the assignment to said appellee, and as said appellee was first in point of time in its purchase, and as Lechner's interest in said mineral estate at the time of said purchase exceeded 84 acres, and as the said 84 acres are of the same kind and of the same value as the remaining acreage of said tract, it is entitled to hold its assignment as against the McGrede children and their assigns. We do not agree with this contention for the following reasons:

■ First, said appellee, being a lessee of one tenant in common of a part of the tract of land held in common without the consent of its cotenants, cannot claim the right of partition of the entire tract so as to set apart a portion of it to be used to the exclusion of the other cotenants.

■ Second, a purchaser of a specified piece of common property from only one of the joint owners acquires no interest in any of the property except that which is embraced in his deed, and when his purchase is without the consent or subsequent acquiescence of the other owners, he takes only the undivided interest of his grantor. Medina Oil Development Co. v. Murphy (Tex. Civ. App.) 233 S. W. 333, 334; Texas Co. v. Meador (Tex. Civ. App.) 243 S. W. 991; Woods v. Rolls (Tex. Civ. App.) 268 S. W. 988; Id. (Tex. Com. App.) 291 S. W. 532; Henderson v. Chesley (Tex. Civ. App.) 273 S. W. 299; Broom v. Pearson (Tex. Civ. App.) 180 S. W. 895.

■ Appellee Barnsdall Oil Company, having acquired its lease from Lechner, one of the co-owners of a portion only of the entire tract held in common, without the consent of his co-owners, cannot claim the right of partition of the entire tract so as to set apart a portion thereof to it to be used to the exclusion of the other co-owners. Said appellee's effort is to partition the mineral estate in and to the entire 184 acres, notwithstanding its interest, whatever it may be, is limited to the 84 acres described in its assignment from Lechner. It has no interest whatsoever to the minerals in the remaining 100 acres. Its interest is not coextensive with the entire tract sought to be partitioned; therefore it does not have a right to force a partition of the entire tract. There are two absolutely essential requisites to a forced partition: First, the partitioners must be joint owners of the land sought to be partitioned, or of some interest therein; and, second, the parties seeking partition must have an equal right to possession with the other joint owners. Neither of these essentials exist here. Appellee and appellants are not joint owners of the minerals in the 184 acres, and appellee has no sort of possessory rights in any of the acreage except the 84 acres described in its assignment. Appellee does have a joint ownership with appellants in the mineral estate in and to the 84 acres covered by its assignment, and as to this acreage it could force a partition and have its portion of said mineral estate in and to said 84 acres segregated from appellants' and set apart to it for its exclusive use. But as the entire tract of 184 acres, joint ownership being lacking, and appellee not having the right of possession to any part of 100 acres thereof, no right to force partition exists in its favor.

In the case of Medina Oil Development Co. v. Murphy, supra, the court held:

"There is another, and we think sufficient, reason for holding that the plaintiff below was not entitled to partition as prayed for. The lease in question covered only 1,000 of the 1,951 acres owned jointly by the Murphys and Fusselman. Partition of the entire 1,951 acres is here sought. In no event would appellant be entitled to a partition of land not covered by his lease, which includes only 1,000 acres specifically described. It does not embrace the remaining 951 acres, or any part thereof. Appellant obtained no interest, by lease or otherwise, in the 951 acres, and cannot obtain an interest therein by floating his lease down upon it by partition. As was said by Chief Justice Roberts in Arnold v. Cauble, 49 Tex. 527:

"'A partition is a distribution of land between persons who are part owners, and cannot be made to operate as a conveyance of land to one of the parties to the suit who had no interest in or title to the particular portion which was given to him in the division.'"

The foregoing authorities deal with statutory partition, but we cannot perceive any reason why the principles announced in them are not also applicable to equitable partition. No partition can be effected under the rules of equity in cases where such a partition is prohibited by the statute (Vernon's Ann. Civ. St. art. 6082 et seq.).

Believing, as we do, that the court should have granted appellants' motion for instructed verdict as to said appellee, we therefore

reverse the judgment of the trial court and here render judgment against appellee Barnsdall Oil Company, in favor of appellant G. E. Hubbard for a five-sixths of one-half the minerals estate in, on, and under said 84 acres of land; and in favor of appellant F. L. Luckel for a one-sixth of one-half of the mineral estate in, on, and under said 84 acres.