## ASSMANN v. TRAVELERS' INS. CO.

(Circuit Court of Appeals, Eighth Circuit. March 18, 1909.)

### No. 2,734.

INSURANCE (§ 171*)—ENDOWMENT POLICY—CASH SURRENDER VALUE—MISTAKE.

A ten-year endowment policy provided that, if insured should survive the endowment period, the company would pay $2,000 in successive annual installments of $200. The policy gave to insured an option to take the computed value of the annuities at any annual payment day after the first, and contained a table showing that the amount due in 1904, when the first annuity fell due, would be $1,653.76. The policy as delivered also contained a table of cash surrender values for each $1,000, which would be allowed by the insurer at the end of each five-year period from the date of the policy in 1894. Opposite the figure 5 denoting the five-year period were the figures $266, indicating that the cash surrender value payable on each $1,000 of the policy at the expiration of five years would be $266, but opposite the figure 10, were the figures $1,653.76. *Held* that, whether the option was designated as "commuted annuities" or "cash surrender value," the parties intended that the insured might at his election take the present value of the annuities, rather than payment in installments, and hence the figures indicating the surrender value at

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the expiration of the tenth year were a mutual mistake and indicated the surrender value of the full policy, and not the surrender value of each $1,000 thereof.

[Ed. Note.—For other cases, see Insurance. Cent. Dig. § 357; Dec. Dig. § 171.*]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

F. J. McMaster (Carter, Collins & Jones, on the brief), for appellant.

Tyson S. Dines (M. F. Watts and Mr. W. M. Williams, on the brief), for appellee.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. This was a bill to reform a policy of life insurance, and pending its determination to enjoin an action at law on the unreformed policy. In 1894 Assmann procured from the insurance company a 10-year endowment policy, whereby the insurance company agreed to pay him, if he should survive the endowment period, the sum of $2,000 in successive annual installments of $200 each. The primary obligation therefore of the company was to pay the insured 10 annuities of $200 each, beginning in the year 1904 and ending with the year 1914, amounting in all to the sum of $2,000 only, whenever paid. The policy gave to the insured an option, however, to take the commuted value of the annuities at any annual payment day after the first one. A table appeared on the back of the policy stating the amount of commuted annuities which the insured might at his option take at different periods during the 10 years while the annuities were falling due. According to this table, the amount due in 1904, when the first annuity fell due, was $1,653.76. From that table it appears that if Assmann had lived, as he did, to the end of the endowment period, and had desired to avail himself of the option reserved to take the commuted value of his 10 prospective annuities, he was entitled to receive from the insurance company in all the sum of $1,653.76. The policy as delivered to the insured also contained a table specifying the cash surrender value for each $1,000 which would be allowed by the company at the end of each five-year period from the date of the policy in 1894. The policy being only for a period of ten years limited the application of this table to the surrender values payable at the end of five years and at the end of ten years. Opposite the figure 5, indicating the five-year period, were placed the figures $266, indicating that the cash surrender value payable on each $1,000 of the policy at the expiration of five years after its date would be $266. Opposite the figure 10, denoting the tenth year after the issue of the policy, there were placed the figures $1,653.76, indicating that the cash surrender value payable on each $1,000 of the policy at the expiration of the endowment period of ten years would be $1,653.76, or a total on the policy of $2,000 of $3,307.52.

It is the contention of the insurance company that a mutual mistake

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was made in placing the figures $1,653.76 opposite the figure 10; that that amount was in fact and was intended to be the full amount that would be paid as the cash surrender value of the full $2,000 policy, and not as the cash surrender value of each $1,000 thereof.

Whether the option allowed the insured was to take the commuted annuities or the cash surrender value at the end of the endowment period, it is evident that both parties must have intended that the option of the insured was, in substance and effect, to take the then present worth in the year 1904 of 10 prospective successive annuities of $200 each. Whether the option or privilege was designated as "commuted annuities" or "cash surrender value," it is clear that the purpose of the parties was to permit the insured at his election to take the then present value of the annuities, rather than to take them in installments of $200 for 10 successive years. It is axiomatic that the net present worth of such annuities in the year 1904 could not exceed the aggregate of all of them irrespective of the times they were to mature. It is manifest that it must have been less than the total amount ultimately payable to the extent, at least, of reasonable interest on the deferred payments.

The policy as issued, instead of conforming to these most obvious arithmetical calculations and results, gave to the insured the right to accept as the cash surrender value of his policy of $2,000 payable in annuities for 10 years the total sum of $3,307.52. This is substantially twice the amount of any fair cash surrender value based on any reasonable rate of interest. It takes but little familiarity with the principles governing insurance to demonstrate that here was a plain and mutual mistake. The commuted value of all the annuities when the first annuity fell due was agreed to be $1,653.76, while the cash surrender value, which if at all applicable at the period of maturity of the endowment, which is denied by the insurance company, is stated to be exactly twice that sum. As already stated, whether we call it "commuted annuities" or "cash surrender value," the obvious and plain purpose of either or both of them was to give to the insured the right to take the net present worth of his annuities, rather than to wait and collect them from year to year until the last fell due. We fail to see why upon principle the amount should not be exactly the same in either case. If the conclusion which we have just reached from the figures employed and obvious principles of insurance needed reinforcement, such reinforcement is abundantly found in the proof. No pretense is made by any witness that upon any sound principles of insurance an amount of $3,307.52 could under any circumstances be the cash surrender value at the end of the endowment period of the policy of $2,000 issued to Assmann.

During the progress of the trial below the insurance company was allowed to deposit the sum of $1,653.76 in the registry of the court for the benefit of the insured. The learned trial court entered a decree reforming the policy as prayed for and ordering the amount of the deposit to be paid to the insured if he should elect to take it, or if he should elect to take the accruing annuities of $200 a year, rather than avail himself of the right to commuted annuities, then that the deposit of $1,653.76 be returned to the insurance company.

The court further enjoined the prosecution of the action at law on the unreformed policy. Certain provisions were made with respect to the interest which need no comment.

We are satisfied that the decree was substantially correct, and that any other result would not only have thwarted the manifest purpose of both parties in the contract as originally made, but would have worked a gross injustice.

The decree is affirmed.