## GREAT WESTERN MFG. CO. v. ADAMS.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1910.)

No. 3,095.

1. EQUITY (§ 3*)—GROUNDS FOR RELIEF—RELIEF AGAINST NEGLIGENCE.

Courts of equity will not relieve parties when their condition is attributable to a failure to exercise ordinary care for their own protection.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 16; Dec. Dig. § 3.*]

2. REFORMATION OF INSTRUMENTS (§ 16*)—RIGHT TO REFORMATION—NEGLIGENCE.

Complainant executed a deed for leasehold property which it held under a long term lease containing a provision for a reversion to the lessor for breach of a condition subsequent. Its deed contained a covenant of warranty which did not except such right of reversion and such right, having been exercised it was sued on in its covenant by its grantee. Its attention had been particularly drawn to the omission, and it executed the deed only after verbal assurance from its agent contrary to the plain terms of its covenant. Held, that if the deed did not express its true intent it was due to its own fault or negligence, and that it was not entitled to a reformation of the same in equity on the ground of either mistake, fraud, or accident.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 68; Dec. Dig. § 16.*]

Appeal from the Circuit Court of the United States for the District of Kansas.

In Equity. Suit by the Great Western Manufacturing Company against W. W. Adams. Decree for defendant, and complainant appeals. Affirmed.

James A. Reed (W. W. Hooper and John H. Atwood, on the brief), for appellant.

H. C. Mechen, for appellee.

Before SANBORN and ADAMS, Circuit Judges, and McPHERSON, District Judge.

ADAMS, Circuit Judge. This was a bill to enjoin an action at law and reform a deed. Relief was denied in the Circuit Court, and complainant appealed. The facts are these: On April 30, 1898, the complainant, the Great Western Manufacturing Company, executed a deed conveying to defendant Adams a leasehold term in and to a lot of ground in the town of Ozark, Ark. Before the execution of that deed the lot had been leased by the town, its owner, to the Ozark Canning Company for the term of 99 years. That company subsequently reconveyed it to its owner, and the town again leased it for practically the unexpired term of the Canning Company lease to W. S. Schultz and J. T. Jones, from whom the Manufacturing Company deraigns

title. The last-mentioned lease contained a condition subsequent that the lessees should maintain upon the demised premises during the entire term of the lease a roller flouring mill of a specified capacity, and, as security for the performance of that condition, a provision for a reverter to the town in case of its breach was inserted.

The lease having been first made to the Canning Company was, even after the second lease had been given to Schultz and Jones, colloquially referred to as the "Canning Company lease." In the conveyance to Adams made by the Manufacturing Company there was a general warranty of title with a saving clause as follows:

"Saving and excepting only the right of reversion after the expiration of said lease of ninety-nine years and the vendor's lien herein reserved."

The "said lease" there referred to was in the fore part of the deed described as the 99-year lease under which the Canning Company had occupied the premises. Adams, who held by mesne conveyances through the Manufacturing Company, under the Schultz and Jones lease, was ousted by the town for breach of the condition requiring the maintenance of the flouring mill and sued his grantor, the Manufacturing Company, on its covenant of warranty for damages. In the trial of that action the defendant was confronted with the fact that the saving clause in its covenant of warranty did not except the right of reversion reserved in the Schultz and Jones lease. Thereupon this suit was instituted by it to stay further prosecution of the action at law and reform the deed so as to make it except from the warranty the right of reversion contained in the last-mentioned lease, on the alleged ground that the language of the saving clause was a mistake and did not express the intention of the parties.

No right of reversion was reserved in the Canning Company lease and the exception of that supposed right from the operation of the warranty in the Adams deed was meaningless. There was no right of reversion except that specified in the Schultz and Jones lease to which the saving clause could by any possibility apply. The parties to the Adams deed, therefore, must have intended to except from the covenant of warranty the right of reversion reserved in the last-mentioned lease. The failure of the scrivener to accurately express the true intent of the parties undoubtedly arose from the commonly accepted colloquial name given to the lot which was the subject of the conveyance. We reformed a contract in the case of Assman v. Travelers' Ins. Co., 94 C. C. A. 58, 168 Fed. 694, upon a similar state of facts and should not hesitate to do so in this case were it not for certain facts which, in our opinion, deprive the Manufacturing Company of the right to equitable relief. To those facts we will now give attention.

E. H. Mathes, a lawyer practicing in the town of Ozark, had been the attorney for the Manufacturing Company in the proceedings which resulted in its acquisition of the Schultz and Jones lease, and subsequently became the agent of that company to make a sale of it. He conducted negotiations with Adams, who resided also at Ozark, which resulted in a sale of the property to him for $3,000, and afterwards prepared the deed for his principal to execute. This was sent by mail

to Leavenworth, Kan., its place of business. The deed as prepared and sent to complainant contained the covenant of warranty and the saving clause as they now appear; and the complainant's officers upon its receipt executed it and returned it to Mathes for delivery to Adams. Some fault was found with the acknowledgment of the deed which necessitated its return to the complainant for correction. Upon receiving it the second time Mr. Samuel H. Wilson, then secretary and now president of the Manufacturing Company, who appears to have had the transaction in charge, read over the deed and according to his testimony was struck by the peculiarity of the covenant of warranty. He testified that he discussed the matter with his father, then president of the company, and that they declined to execute the deed until they were assured that it was mutually understood that the company was conveying only the title it had received from Schultz and Jones. He said:

"After receiving this assurance our fears were quieted and we executed the deed. * * *"

He further testified as follows:

"When it [the deed] was returned to us with an objection, very naturally I read the whole instrument over in order to see just exactly what it was. I then raised the point with my father that I did not understand that clause, and we discussed the matter pro and con until we finally received assurance that the reversionary clause simply meant that we were conveying only the title that we secured from Schultz and Jones, and until this matter was mutually understood we did not execute the deed."

The substance of the whole matter is this: The attention of complainant's officers was attracted to the peculiar phraseology of the clause in question before they executed the deed to Adams. It stated in plain English that their company warranted title in Adams against all lawful claims except only the possibility of reversion supposed to have been contained in the Canning Company lease. That language necessarily implied that it warranted title in Adams against the assertion of the reversionary right actually reserved in the Schultz and Jones lease. In other words, with knowledge of the full meaning and import of the covenant now sought to be corrected they caused the deed to be executed and delivered, in reliance upon an assurance, contrary to the import of the terms employed, that it was mutually understood that the covenant of warranty did not mean what it said. On this state of facts we think there is no equity in the present bill. If an injustice is done it was invited by complainant. Neither mistake, fraud, nor accident brought it about. Complainant's present dilemma is attributable to a misplaced confidence in the assurance received from its agent Mathes. It placed an unwarrantable reliance upon a verbal understanding to contravene the effect of a written contract. A little trouble and possibly a little expense would have protected it from all hazard.

Courts of equity will not relieve parties from the consequences of their own folly or assist them when their condition is attributable to a failure to exercise ordinary care for their own protection. Farnsworth v. Duffner, 142 U. S. 43, 12 Sup. Ct. 164, 35 L. Ed. 931; Burk v. Johnson, 76 C. C. A. 567, 146 Fed. 209, 215, 216; Betts v. Gunn,

31 Ala. 219; Roemer v. Conlon, 45 N. J. Eq. 234, 19 Atl. 664; Andrew v. Spurr, 8 Allen (Mass.) 412. The decree of the Circuit Court must be affirmed.