WICHITA PETROLEUM CO. et al. v. WINANT et al.

(Circuit Court of Appeals, Fifth Circuit. December 13, 1923. Rehearing Denied January 31, 1924.)

No. 4167.

1. Sales ⬅82(1)—Contract for sale of oil produced construed as to payments; "during said period."

Under a contract by lessee to sell all the oil produced from December 1, 1921, to October 1, 1922, for $625,000, in payments of $25,000 down and $60,000 a month, provided that payments in excess of $225,000 should be limited to the proceeds of one-half the oil production during said period," held, that the words "during said period" referred to the whole period covered by the contract.

2. Evidence ⬅448—Not error to exclude evidence, where contract not ambiguous.

Where a written contract for sale of oil produced was not ambiguous, it was not error to exclude evidence to aid in its interpretation.

3. Reformation of instruments ⬅36(3)—Necessary allegations stated.

To obtain a reformation of contract, it is necessary to allege either mutual mistake, or fraud or inequitable conduct on the part of the party to be benefited.

4. Reformation of instruments ⬅37—Plea held not to allege mutual mistake, fraud, or inequitable conduct.

A plea for reformation of a contract did not show mutual mistake, fraud, or inequitable conduct, where it alleged that plaintiff intentionally had the contract drawn in the form in which it was executed, and did not allege that it refrained from making known its interpretation of the contract, or that defendant did not know what the contract contained.

5. Reformation of instruments ⬅23—Right held lost by accepting benefits of supplemental agreement and by exercising option under original contract.

Where, after lessees of oil property sued for installments which they claimed were due under a sale of all the oil produced, defendants, other than purchaser, entered into a supplemental agreement, binding themselves as sureties for the performance of the original contract, held that,

though the purchaser was not a party to the supplemental agreement, it ratified it by accepting the benefits thereof, and by exercising, with the other defendants, the option to purchase the lease, and lost any right to have reformation.

6. **Interest**  &#x229E;15—**Allowable, though amount due on written contracts unliquidated.**

Under Rev. St. Tex. art. 4977, interest may be allowed in ascertaining the sum payable on written contracts, though unliquidated.

In Error to the District Court of the United States for the Western District of Texas; Duval West, Judge.

Suit by John G. Winant and another against the Wichita Petroleum Company and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

W. M. Cannon, of New York City, and J. T. Montgomery, of Wichita Falls, Tex. (Carrigan, Montgomery, Britian, Morgan & King, of Wichita Falls, Tex., on the brief), for plaintiffs in error.

Palmer Hutcheson, of Houston, Tex. (J. R. McLane, of Manchester, N. H., H. M. Garwood, of Houston, Tex., McLane & Davis, of Manchester, N. H., and Baker, Botts, Parker & Garwood, of Houston, Tex., on the brief), for defendants in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

BRYAN, Circuit Judge. This suit was brought to recover an amount alleged to be due to the plaintiffs, Winant and Coyle, under a contract between them and the Wichita Petroleum Company, one of the defendants. The plaintiffs were the owners of an oil and gas lease subject to two one-eighth royalty interests. In the contract the plaintiffs are designated as parties of the first part, and the Wichita Petroleum Company as party of the second part. Paragraphs 3, 4, and 5 of the contract are as follows:

"3. Said parties of the first part hereby sell to the party of the second part, and the said party of the second part hereby purchases, subject to the royalty interests aforesaid, all oil produced or that may be produced on said lease for the period commencing at midnight December 1–2, 1921, and ending at midnight October 1–2, 1922, whether said oil be produced from the well now existing on said premises or other wells that may be drilled during said period, all said oil to be retained by the party of the second part as produced, and said party of the second part agrees to pay for all such production, without regard to the quantity thereof, the sum of six hundred and twenty-five thousand dollars ($625,000) in payments as follows: Twenty-five thousand ($25,000) upon the execution of this agreement, and the balance in ten (10) equal payments of sixty thousand dollars ($60,000) each, payable monthly on the 5th day of each month, beginning January 5, 1922: Provided, however, that payments in cash in excess of $225,000 shall be limited to an amount equal to the proceeds of the sale of one-half of the oil production of said property during said period subject to the royalty interests aforesaid, which sales shall not be for less than the market price therefor in that locality. The title to the oil so produced shall vest in the party of the second part immediately upon the production thereof from said lease. The second party may cease to operate said lease by reason of the failure of the property to produce oil sufficient to pay the operating expenses out of the one-half of the oil production thereof, in which event the property shall revert to said parties of the first part.

"4. Said parties of the first part hereby give and grant unto said party of the second part an option to purchase said lease subject to the royalty interests aforesaid, to become effective at the expiration of the period ending October 1, 1922, together with the equipment and other personal property above mentioned, the consideration of such purchase to be twenty-five thousand dollars ($25,000): Provided, however, that if at the expiration of the period ending October 1, 1922, the full amount of $625,000 has not been paid by reason of the operation of the proviso in paragraph 3 hereof, there shall be paid in addition to the sum of $25,000 a further amount equal to the difference between $625,000 and the amount already paid, this latter payment to be made out of one-half the proceeds of the sale of the oil produced and saved on said property subject to the royalty interests aforesaid until payment in full has been made.

"5. Coincidently with the execution of this agreement said parties of the first part shall make, execute, and acknowledge in due form of law an assignment and transfer of the lease above described, subject to the royalty interests aforesaid, together with all equipment and other personal property above mentioned, and shall deposit said assignment with the Equitable Trust Company of New York in escrow, with instructions to the effect that, if said party of the second part shall, on or before the 1st day of October, 1922, deposit with said escrow holder a written notice stating in substance that said party of the second part or its successors or assigns has accepted the above option and agreed to purchase said lease on the terms above set forth, said assignment and transfer will be delivered to the said party of the second part, or its successors or assigns, on October 1, 1922, upon payment to the said escrow holder for the benefit of said parties of the first part the sum of $25,000 in cash."

There is no other period of time referred to in the contract, except the period "commencing at midnight December 1–2, 1921, ending at midnight October 1–2, 1922." The Wichita Petroleum Company made the cash payment of $25,000, and the first three monthly payments of $60,000 each, in strict compliance with the terms of the contract. On April 5 the plaintiffs demanded payment of the full amount of $60,000, claiming they were entitled, in computing the amount then due, to include all the oil produced during the first three months of the contract period. The Wichita Petroleum Company refused to comply with this demand for payment, insisting that the period prior to March 5, 1922, should not be included in computing the monthly payments. During this period the proceeds from the sale of oil amounted to $306,236.85, and between March 5 and April 5 such proceeds amounted to $53,599.09. If, therefore, the plaintiffs were correct in their construction of the contract, on April 5 they were entitled to a payment of $60,000. On the other hand, if the Wichita Petroleum Company was correct in its construction, it owed at that time only $46,799.54, that amount being made up of $20,000, to complete the cash payments of $225,000, and $26,799.54, which was one-half of the proceeds realized from the sale of oil in March.

The plaintiffs promptly brought suit for $60,000, which they claimed was due on April 5, and later brought another suit for a like amount, which they claimed was due on May 5. While the suits were pending, the plaintiffs entered into a supplemental agreement, dated June 19, 1922, with the defendants included in this suit, other than the Wichita Petroleum Company. This agreement, after reciting that differences had arisen between the parties to the original contract, and that said defendants were financially interested in the Wichita Pe-

troleum Company, provided that the plaintiffs, without waiving their claims for payment, should dismiss the suits already brought by them, and should forbear to bring further suits until after the expiration of the period of 10 months covered by the original contract, and that the said defendants should cause payments to be made which would represent one-half of the proceeds of all oil produced during the month of March and all succeeding months until October 1, 1922, and bound themselves as sureties for a full and faithful performance by the Wichita Petroleum Company of the original contract. The defendants availed themselves of the option, and secured an assignment of the lease of the plaintiffs, as provided for in paragraphs 4 and 5 of the original contract. Payments were made in accordance with the construction placed upon the original contract by the Wichita Petroleum Company, and shortly after October 5, 1922, the plaintiffs brought this suit to recover the unpaid balances of the various installments computed according to their construction of the original contract.

The defendants pleaded a general denial, and also filed a special plea, setting forth that the plaintiffs and the Wichita Petroleum Company, shortly before the original contract was entered into, entered into negotiations for the purchase from the plaintiffs of the oil and gas lease described in the complaint, for the sum of $650,000, payable $250,000 by March 5, 1922, in installments, and the balance out of the proceeds of the sale of oil; that the plaintiffs stated that they desired the agreement, when reduced to writing, to take the form of an agreement for the sale of oil rather than for the sale of the lease itself; that subsequently the plaintiffs prepared the original contract, and intentionally so phrased it as to enable them to contend that they would be entitled to one-half of the proceeds of the sale of oil produced prior to March 5; that the Wichita Petroleum Company, although it knew the contract had not been prepared in the form originally agreed upon, in good faith believed that it provided only for payments out of the proceeds of oil produced subsequently to March 5, and, acting upon that belief, signed the original contract. Based upon this plea, the defendants incorporated a prayer for the reformation of the contract, but on motion of the plaintiffs the special plea was stricken out.

At the trial the court sustained an objection to an offer of evidence as to the situation of the parties, the subject-matter of the contract, and the circumstances surrounding its execution. A jury was waived in writing, and it was stipulated that the plaintiffs, according to their construction of the contract, were entitled to a judgment in the principal sum of $152,832.87. The court entered judgment for that amount, together with interest upon each monthly installment from the date it was due. The defendants contend (1) that the contract is ambiguous, and parol evidence was admissible in aid of it, or, if not ambiguous, the construction placed upon it by the defendants is correct; (2) that the special plea is good; and (3) that the court erred in allowing interest on the monthly installments from dates they respectively became. due and payable.

[1, 2] 1. The only period of time mentioned in the contract runs from its execution in December to its expiration in the following October, and it is mentioned at least seven times. We therefore think

that the phrase "during said period" refers to the whole period covered by the contract. Against this conclusion it is urged that the title to the oil vested in the defendants, and that it would be difficult to calculate accurately the amount of the monthly payments, for the reason that future payments, which could not be known, because the oil had not yet been produced, would also be included. The title to the oil is of no significance. Payments were to be made irrespective of production, subject only to the right of the Wichita Petroleum Company to terminate the contract by reason of the failure of the property to produce oil sufficient to pay operating expenses. It is to be conceded that the payments were not to be calculated upon the basis of oil to be produced in the future, but that does not prevent the monthly payments from being made and supplemented, if necessary, out of the proceeds from the sale of oil produced during the first three months, while the cash payments which were required in any event were being made. The contract not being ambiguous, it was not error to exclude evidence designed to aid in its interpretation. Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622; Simpson v. United States, 172 U. S. 372, 19 Sup. Ct. 212, 43 L. Ed. 482.

[3-5] 2. In order for the plea for reformation of the contract to be upheld, it is necessary to allege either that the mistake was mutual, or that it was the result of fraud or inequitable conduct on the part of the party to be benefited. 34 Cyc. 906. It is quite clear that there was no mutual mistake, since the defendants aver that the plaintiffs intended to provide for payments out of the proceeds of the sale of oil during the first three months of the life of the contract. No fraud or inequitable conduct was averred. The most that is averred is that the plaintiffs refrained from making known the interpretation which they subsequently insisted upon. There was no concealment, and it is not alleged that the Wichita Petroleum Company did not know, as well as the plaintiffs did, what the contract contained. The supplemental agreement was executed with full knowledge of the interpretation which the plaintiffs had placed upon the original contract. Notwithstanding this, it was specifically provided that the defendants, other than the Wichita Petroleum Company, bound themselves as sureties for the full and faithful performance of the original contract. It is true the Wichita Petroleum Company was not a party to the supplemental agreement; but it was a beneficiary of it, and must be held to have ratified it by accepting its benefits, and by exercising along with the other defendants the option to purchase the lease. Under these circumstances, we are of opinion that the plea for reformation came too late. Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; Chicago, etc., Ry. Co. v. Belliwith, 83 Fed. 437, 28 C. C. A. 358; Great Western Mfg. Co. v. Adams, 176 Fed. 325, 99 C. C. A. 615; Bailey v. Lisle Mfg. Co., 238 Fed. 257, 152 C. C. A. 3; New Martinsville Oil Co. v. Barnett Oil & Gas Co., 261 Fed. 34, 171 C. C. A. 630; Empire Gas & Fuel Co. v. Higgins Oil & Fuel Co. (C. C. A.) 279 Fed. 977; 23 R. C. L. 310.

[6] 3. The only objection to the allowance of interest is that the principal amounts were unliquidated. In Texas it is provided by statute (Rev. St. Tex. art. 4977) that on all written contracts in ascertaining the sum payable interest shall be allowed. Federal Life Ins. Co.

v. Kriton, 112 Tex. 532, 249 S. W. 193. And that seems to be the general rule, even in the absence of statute. Spalding v. Mason, 161 U. S. 375, 16 Sup. Ct. 592, 40 L. Ed. 738; Robertson v. Miller (C.. C. A.) 286 Fed. 503.

Error is not made to appear by any of the assignments, and the judgment is affirmed.