**GULF PIPE LINE CO. v. MANN et al.**

**SAME v. NEAREN et al.**

**Nos. 3144, 3145.**

Court of Civil Appeals of Texas. Beaumont.

Nov. 10, 1937.

Rehearing Denied Dec. 15, 1937.

William L. Wise and P. O. Settle, both of Fort Worth, B. C. Clark and John E. Green, Jr., both of Houston, and Duff & Cecil, of Beaumont, for appellant.

M. L. Lefler, E. B. Votaw, and Howth, Adams & Hart, all of Beaumont, for appellees.

WALKER, Chief Justice.

Gulf Production Company held an oil lease on the Trenton Rock acre, a part of the John Douthit survey in Jefferson county, under the Manns and the Nearens, hereinafter referred to jointly as appellees; the royalty interest of the Manns in the oil produced was 15/384, and of the Nearens 21/384.

On the 5th day of July, 1926, appellees executed a division order to Gulf Pipe Line Company, "guaranteeing" that the Trenton Rock acre was a part of the John Douthit survey and authorizing Gulf Pipe Line Company to receive oil "in purchase" from the wells on the Trenton Rock acre; we quote from this order as follows:

"First—The oil run in pursuance of this division order shall become the property of the Gulf Pipe Line Company as soon as the same is received into its pipe lines.

"Second—The oil received in pursuance of this division order shall be paid for to the party or parties entitled thereto, according to the division of interest shown above, at the price for each day's receipts posted on that day by the Gulf Pipe Line Company, for the same kind and quality of oil in the field in which it is received. Settlements therefor shall be made semimonthly. For the amount due on account of the oil received during the first fifteen days of each calendar month, payment shall be made on or before the twenty-fifth day of such month; and for the amount due on account of the oil received during the balance of such calendar month, payment shall be made on or before the tenth day of the succeeding month. These payments are to be made in checks of the Gulf Pipe Line Company, to be mailed or delivered to the parties thereto entitled.

"Third—The Gulf Pipe Line Company may refuse to receive any oil which may not be merchantable. If necessary to make it so, oil shall be steamed or treated by the well owners before receipt by the pipe line. Upon receipt of the oil the company will make proper deduction for all of the dirt, sediment or other foreign matter in the oil. In addition, the Company will deduct one (1%) per cent to cover loss in handling. Further correction will be made for temperature of the oil purchased, by deducting or allowing on the basis of one twenty-fifth (1-25th) of one (1%) per cent for each degree Fahrenheit above or below sixty degrees Fahrenheit. In making settlement the Gulf Pipe Line Company's grades and measurements shall govern and control.

"Fourth—The undersigned agree, in case of any adverse claim of title to the oil run hereunder, or any part thereof or to the land from which it is run, to furnish to the Gulf Pipe Line Company satisfactory evidence of title, or, in case of failure to do so, to furnish satisfactory indemnity bond, on reasonable demand, against such adverse claim or claims; and that the Gulf Pipe Line Company may retain the purchase price of the oil until such bond shall be furnished, or until the dispute as to ownership is settled, so as to relieve the Company from all liability for oil received."

Gulf Pipe Line Company, under this order, received and paid for the royalty oil belonging to appellees up to September 1, 1927, paying the Manns $32,095.02 and the Nearens $44,933.10. Subsequent to September 1, 1927, Gulf Pipe Line Company received under the division order royalty oil belonging to the Manns of the value of $14,014.48, and to the Nearens $19,620.70, for which it refused payment on the ground that, on September 29, 1927, the Falls filed suit against Gulf Production Company, appellees, and others, for the title to the Trenton Rock acre and for the value of the oil produced therefrom, and this suit constituted "an adverse claim of title to the oil," under the division order. Gulf Pipe Line Company was not a party to that suit. Appellees were advised of the filing of that suit and were requested by Gulf Pipe Line Com-

pany to furnish "a satisfactory indemnity bond" which they did not do. Gulf Production Company continued operating its lease on the Trenton Rock acre, and delivered the oil produced therefrom to Gulf Pipe Line Company until the lease was exhausted, at which time the royalty oil amounted in value to the sums stated above. The Falls' suit remained inactive on the docket of the court until the 21st day of October, 1935, when they dismissed appellees from·their suit, but upon an agreement with them that the suit would remain on the docket for prosecution against the other defendants for the value of the oil produced from the Trenton Rock acre, allowing credit, however, for the royalty oil produced subsequent to September 1, 1927, not to exceed $34,000. On January 23, 1936, the Falls entered into a written contract with appellees whereby, for the sum of $1,000 to be paid by the Manns and a like sum to be paid by the Nearens, they settled with appellees for their claimed interest in the oil produced from the Trenton Rock acre by Gulf Production Company subsequent to September 1, 1927, but expressly stipulated that they retained the right to prosecute their suit against Gulf Production Company for the value of all other oil as claimed in their petition filed September 29, 1927, which amounted to more than a million dollars. The $2,000 was to be paid the Falls out of the $34,000 released by them from their suit against Gulf Production Company. When Gulf Pipe Line Company refused to make itself a party to that contract by paying for the royalty oil, appellees instituted separate suits against it for the value of the royalty oil belonging to them respectively, produced subsequent to September 1, 1927, and retained under the provisions of the division order, with interest at 6 per cent. per annum from the delivery dates of the oil. Gulf Pipe Line Company answered these suits by pleas of general and special demurrers, general denials, by special pleas of the division order on the theory that, since the Falls' suit was still pending, these suits were prematurely brought, and by pleas of the statutes of limitation of two and four years, Vernon's Ann.Civ.St. arts. 5526, 5527; and the Nearen suit, that they had released their claim for interest. On trials to the court without a jury, the Manns recovered judgment for the principal amount of $14,014.48 and interest in $7,-007.27, and the Nearens recovered judg-

ment for the principal amount of $19,620.-70 and interest in the sum of $9,901.55.

The Falls intervened in each of these suits, pleading their settlement with the Manns and the Nearens on the consideration of $1,000 to be paid by each of them out of their royalty oil; the judgments of the court awarded the Falls $1,000 from the amount recovered by the Manns, and a like sum from the amount recovered by the Nearens.

From these judgments Gulf Pipe Line Company has duly prosecuted its appeal to this court. Since the two appeals, except on one proposition, are based on the same facts, they will be considered together.

Appellant's first point is that the suits were prematurely brought, but conceding that the judgments against 'it should be affirmed as to the principal sums, without interest, on condition that the judgments in these cases constitute a bar to the further prosecution by the Falls of their suit against Gulf Production Company and others, filed on the 29th day of September, 1927. That the Falls, by making themselves parties to these suits and by taking judgment against appellant in each case for $1,000 as a part of the royalty money due appellees, have estopped themselves from further prosecuting their suit against Gulf Production Company we have no doubt. Appellees could maintain these suits only by furnishing appellant satisfactory indemnity bonds, which they did not attempt to do or, in the alternative, by furnishing it satisfactory evidence of title. They could furnish satisfactory evidence of title only by extinguishing the Falls' adverse claim of title to the oil produced from the Trenton Rock acre. The Falls could recover their $2,000 only on condition that appellees secured judgments against appellant, to be paid out of appellees' judgments against appellant. The essential fact to be established by appellees and the Falls, as a condition of recovery, was that the Falls had no adverse claim to any part of the royalty oil produced from the Trenton Rock acre; for, if the Falls had an adverse claim, then these suits were brought prematurely. In rendering the judgments in these cases, the court necessarily found that the Falls, by their settlement with appellees and by intervening in these suits and by recovering an interest in the royalty money, had no adverse claim to the other oil produced

from the Trenton Rock acre. In Security National Bank v. Andrews (Tex.Civ.App.) 24 S.W.2d 509, 511, the court said: "Nor can a person accept and reject the same instrument, or, having availed himself of the benefits conveyed by a part of an instrument, reject its other provisions. Doty v. Barnard, 92 Tex. 104, 47 S.W. 712."

In Bearden v. Texas Company (Tex.Civ. App.) 41 S.W.(2d) 447, 464, the court said: "But we adhere to our former conclusion that the defense of estoppel as against Bessie Lee Griffin was conclusively established by her act in receiving from her former guardian on final settlement of the guardianship after her marriage, several thousand dollars collected by him as royalties from the lease which was assailed by her; and further receipts of royalties by her after her marriage in monthly installments covering more than a year, amounting to more than $1,000, since such acts conclusively bound her to a ratification of the lease and of the judicial proceedings which culminated in its execution." See, also, Doty v. Barnard, 92 Tex. 104, 47 S.W. 712; Freeman on Judgments, p. 1329; 17 Tex.Jur. 134, 135.

On our conclusion that the Falls are estopped to prosecute further their suit filed on the 29th day of September, 1927, it follows that the judgments in favor of appellees for the principal amounts sued for, and the judgments in favor of the Falls for an interest of $1,000 in each of these judgments, must be affirmed.

Appellant's second point is that the court erred in rendering judgment against it for interest. Interest is defined by R.S. art. 5069: " 'Interest' is the compensation allowed by law or fixed by the parties to the contract for the use or forebearance or detention of money."

R.S. art. 5070 provides: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable."

It is appellant's contention that the cause of action for the value of the royalty oil due appellees did not accrue prior to the entry of the judgments in these cases, invoking the provisions of article 5070 that interest is recoverable only from and after the time when the sum in controversy is due and payable.

In Parsons v. Parsons, 284 S.W. 933, our Supreme Court, speaking through its Commission of Appeals, stated the general rule, "interest, unless otherwise promised, is payable when the debt upon which it accrues becomes due, and cannot be collected, and does not begin to run, before such maturity," but qualified the effect of the general rule by saying that it is "predicated upon the implied promise gathered from all the circumstances of the case." The clear holding of the Parsons Case on the law of interest is that, when the contract is silent on the payment of interest, the date from which it begins to run— whether from date or maturity of the contract—is to be deduced from the facts of the case, "may be proven by circumstances and inferences"; that when one borrows money—"retains" money after maturity of his original promise to pay, contracting to pay it on a future date—the "most reasonable" inference "in the absence of a showing to the contrary" is an obligation to pay interest from the date of the contract and not from its maturity.

Since nothing was said in the division order about the payment of interest, what is the most reasonable inference to be deduced from its language? There are two express obligations in the contract regulating the payment of the purchase price of the royalty oil. Under section 2, the purchase price matured from the respective delivery dates of the oil. After the debt matured, appellant had the right, under section 4, to "retain" appellees' money and was bound to pay it only when the conditions of section 4 had been complied with. Appellant exercised that right of election by refusing to make the payments under section 2 and by retaining appellees' purchase money under the conditions of section 4. By deducing from the language of the contract an inference to pay interest from and after the delivery of the oil, every word of the contract would be given effect, and violence would be done to none of its provisions.

A reasonable construction of the division order creates an obligation under section 2 to pay for the royalty oil as and when it was delivered, with the right in appellant to "retain" the purchase money—the right to borrow from appellees the amount of the purchase money—under section 4 "in case of an adverse claim of title to the oil," thereby invoking against appellant the following proposition of law announced

by our Supreme Court in the Parsons Case: "The general rule is that one who lends money to, or makes advances for, the benefit of another, is entitled to interest upon the amount so lent or advanced, although nothing is said about interest at the time of the transaction. 33 C.J. p. 201, § 57. This for the reason that in that character of case the circumstances are such as to evidence an intention of the parties that one who thus makes a present loan or advance to another shall be compensated for it. In the absence of a showing to the contrary, such inference is plainly the most reasonable one to draw from the circumstances. In other words, the nature of the contract·is such as reasonably to raise an inference that the loan or advance was not to be a gratuity."

The right to "retain" was not an element of the purchase price of the oil, as where goods are sold on present delivery to be paid for in the future. To give appellant the use of appellees' money—to give it the right to "retain" appellees' money—without the payment of interest, after the obligation to pay matured under section 2, would confer upon appellant a gratuity, the free use of appellees' money, in this case, for ten years. There is not a syllable in the contract suggesting that appellees intended to grant, or that appellant intended to accept, a gratuity by the execution of the. division order.

On another argument interest was due from the maturity date of the purchase price of the oil as fixed by section 2 of the division order. On the assertion of an adverse title to the oil, appellant was not bound to receive delivery of the oil. It had the option to refuse delivery or, having accepted delivery, to retain the purchase price. But the division order did not give appellant the right to use appellees' money. If appellant used the money, equity would compel it to pay for the use; in Kishi et al. v. Humble Oil & Refining Co. et al. (C.C.A.) 10 F.2d 356, 357, construing a division order similar to the one in this case, the court said: "They [the oil companies] had the use of the money, because they kept it, and therefore ought to pay interest as an incident to the principal debt. If they had not wished to use the money, and thus be liable for interest, they could have deposited it in the registry of the court."

In the Kishi Case the court said that the oil companies were stakeholders; and "a stakeholder who retains money is liable for interest. Templeman v. Fauntleroy, 3 Rand. [24 Va.] 434, 447; Crescent Mining Co. v. Wasatch· Mining Co., 151 U.S. 317, 14 S.Ct. 348, 38 L.Ed. 177. For the same reasons Japhet and Coon, the other appellants, are entitled to interest from the Gulf Production Company."

Again, under the doctrine of Yaws v. Jones (Tex.Sup.) 19 S.W. 443, one, who on an election retains money, must pay interest from the date he exercises his election; in this case appellant elected to retain the purchase price of the oil from and after it matured under section 2. So, it must pay interest from the date of its election.

We now come to appellant's defense against the claims of the Nearens for interest on their royalty money.

There was a controversy between Gulf Production Company and the Nearens on the right of the Nearens to receive present payment for their royalty on that part of the Trenton Rock acre within the right of way of the T. & N. O. R. R. Co.; for a partial statement of the nature of this controversy see Baten v. Campbell (Tex.Civ.App.) 62 S.W.2d 1010; Mann v. Rio Bravo Oil Co. (Tex.Civ.App.) 107 S. W.2d 653. In settlement of that· controversy, the Nearens entered into a written contract with Gulf Production Company whereby they received payment of their royalty money on the right of way. In part consideration for that payment, they agreed that the money in controversy in this litigation "shall be withheld by the Gulf Pipe Line· Company without interest thereon as additional security to the Gulf Production Company on account of the payments made herein, until all litigation affecting the title to the said Jeanette Mann lease, both inside and outside the said right of way, has been disposed of or terminated in·favor of said parties herein and the Gulf Production Company." This contract was offered by appellant in evidence in support of its plea that the Nearens had released their claim for interest, but was excluded by the trial court on two grounds; (a) that it was without consideration, and (b) that appellant was not a party to the contract. This ruling was error. The settlement of the controversy between Gulf Production Company and the Nearens was a sufficient consideration for the contract; and, without discussing the relation between Gulf Production Company and appellant, it

is sufficient to say that appellant has the right to claim the benefits of this contract under the doctrine of third party contracts. The contract was made for appellant's benefit, on a valuable consideration, and has not been rescinded or modified. Breaux v. Banker (Tex.Civ.App.) 107 S.W.2d 382, first syllabus, and authorities thereunder cited.

It follows that the judgment in favor of the Manns for interest must be affirmed and it is accordingly so ordered; and that the judgment in favor of the Nearens for interest on their royalty money from the date of its delivery to the date of the judgment in cause No. 3145 is reversed and, on the item of interest, remanded for a new trial. The judgment in favor of the Nearens as affirmed above will draw interest from its date.

The judgment in cause No. 3144 is in all things affirmed, and in cause No. 3145 affirmed in part and in part reversed and remanded.

### On Rehearing.

Appellant vigorously assails our conclusion on the issue of interest, citing among other authorities Clester Bluitt et al. v. Pure Oil Company by Judge Hutcheson, now of the New Orleans Circuit Court of Appeals, filed on the 24th day of March, 1930, when he was district judge, wherein, construing the division order before us in these cases, he refused to follow the Kishi Case on the issue of interest. We do not further review this case because Judge Hutcheson's opinion is not reported; it is before us as an exhibit to appellant's argument on rehearing.

Appellant would distinguish the Parsons Case, cited in the original opinion, on the ground that it involved a verbal contract, while article 5070, R.S. 1925, governs written contracts; that the distinction is not sound in principle is demonstrated by the following additional quotation from the Parsons Case: "Undoubtedly, where the contract in any wise stipulates for interest from date, or from any other event as to that, it will control, and such intention may be evidenced not alone by the express stipulations of the instrument, or agreement, but may be proven by circumstances and inferences, as well."

Appellant gives emphasis to the following quotation from article 5070—that interest is allowed on a written contract "from and after the time when the sum is due and payable." As we understand its argument, the contention is made that the purchase price of the oil, after the Falls suit was filed, matured under section 4 of the division order, and that section 2 ceased to operate as between the parties. This is not a correct construction of the division order. There is nothing in this record denying full validity and controlling effect to its each and every word. There is no conflict in its terms, and between these parties every word can be given effect. Section 2 expressly provided for the payment of the purchase price of the oil semimonthly; the parties agreed to this condition, so, let it stand as a part of their contract. Section 4 did not postpone the maturity date of the purchase price of the oil as provided under section 2; it only gave appellant the right to "retain" the purchase price after it matured, to be paid on the conditions therein stipulated. It does no violence to the language of the contract to relate article 5070 to section 2 of the division order; the purchase price of the oil did not draw interest from the day the oil was delivered to appellant, but had payment been refused, only from the maturity of the semimonthly payments. By exercising the right given it by the division order to "retain" money which had matured in its hands under section 2, appellant directly invoking in appellees' favor the proposition in the Parsons Case that one should be compensated for "a present * * * advance to another."

The division order was prepared by appellant and presented to appellees for their signatures; there was nothing in the original lease contract that required appellees to join in its execution. Had the division order stipulated on its face that appellant would have the right to retain appellees' money under section 4 without paying interest, in this case for ten years, appellees might have refused to execute it; in that event appellant would have been compelled to pay for the oil as stipulated in the lease contract or to refuse to receive the oil under the lease. By its construction of the division order appellant would read into it an extremely onerous obligation which was not in the contemplation of the parties when the original lease contract was executed. Appellant could have avoided the payment of interest by simply stipulating to that effect in the division order; that stipulation was not made and it, and not appellees, ought to bear the consequences.

A division order similar in its terms to the one in issue in these cases was before the court in Gulf Pipe Line Co. v. Warren, 45 S.W.2d 719, 723; construing the division order, the Court of Civil Appeals said: "Under the contract appellant, upon the appearance of an adverse claim, had the right, under the contract, to retain the fund and demand a bond, and having that right it should not be liable for interest on the funds, after such bond had been demanded and refused, regardless of when the demand and refusal occurred."

Appellant insists that we are in conflict with this conclusion. The judgment of the court in that case charged appellant with interest from the date the oil was run to March 8, 1928; on that date it filed its bill of interpleader, tendering the fund into the registry of the court, the proceeding suggested in the Kishi Case, cited in the original opinion. On the facts of the Warren Case, the proposition cited by appellant was pure dicta.

The motion for rehearing is overruled.