

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 24, 1949

Hon. C. H. Cavness
State Auditor
Austin, Texas

Opinion No. V-791

Re: Legal interest on delin-
quent bonuses, rentals,
and royalties due the Pub-
lic Free School Fund.

Dear Sir:

You have requested our opinion regarding
interest on bonuses, rentals, and royalties arising
from mineral leases, payment of which has been with-
held or allowed to become delinquent. You do not
submit copies of any lease contracts. We assume
that they contain no specific provisions for with-
holding royalties or the payment or non-payment of
interest. Since in each of your cases the principal
sums which were withheld have been paid and accepted
by the General Land Office without demand for interest,
we do not have before us any question of interest as
damages. Our discussion is therefore confined to the
interest which can arise by operation of law.

We are appreciative of the fact that the
proceeds of the sale of lands set apart to the Public
Free School Fund are, by the Constitution, directed
to be invested in bonds and securities. Art. VII,
Sec. 4, Constitution of Texas. The interest derived
therefrom is the Available School Fund which is applied
annually to the support of the public free schools.
Art. VII, Sec. 5, op. cit. If the payment of proceeds
for the sale of school fund lands is withheld for any
reason, the school fund loses the interest which might
be derived from the investment of such proceeds.

In Texas, when no specified rate of interest
is agreed, interest at six per cent is allowed by sta-

tute on "all written contracts ascertaining the sum payable from and after the time when the sum is due and payable." See Art. 5070, R. C. S. 1925. The State, when circumstances warrant, is due interest under this statute. State v. Powell, 70 S. W. 2d 297; see State v. Standard Accident Ins. Co., 203 S. W. 2d 984 (Civ. App. 1947, err. ref.); cf Oden v. Gates, 24 S. W. 2d 381.

Your case No. 1 involves the question of interest on the State's 1/16th oil and gas royalty withheld after production under what we assume is a Relinquishment Act lease. The lessee, who also purchased the minerals after production, submitted affidavits of production each month for the period July 1, 1942 to April 30, 1948, but withheld payment of royalty until June 14, 1948, when payment under protest was made to the General Land Office. No express demand for the principal is shown prior to March 25, 1948. No interest was paid by lessee or demanded by the Commissioner of the General Land Office. You ask us to assume that the General Land Office now holds the principal in suspense as requested by the lessee. The lessee has given as its reason for withholding the royalty payments "the general boundary line dispute in this area."

It is settled that an oil and gas lease of mineral reserved school lands executed under the Relinquishment Act is a contract between the State and the lessee. It is also settled that Articles 5380 and 5381, R. C. S., which provide a time and place for the payment of the State's royalties, are incorporated by law into every Relinquishment Act lease, and that "together they constitute an obligation in writing. . . ." Empire G. & F. Co. v. State, 121 Tex. 138, 47 S.W. 2d 265; Permian Oil Co. v. State, 161 S. W. 2d 568. The sums payable as royalty by the lessee to the State under the instant contract were ascertainable, and in fact were ascertained, by the lessee each month. It is therefore our opinion that the obligation of this Relinquishment Act lessee to pay royalty bears legal interest under the statute. The interest should be calculated on each royalty payment withheld from the time such payment became due and payable under the

statutes cited to the date of payment under protest.
31-A Tex. Jur. 338.

We enclose herewith a copy of the Opinion
of Hon. R. W. Yarborough, when an Assistant Attorney
General, to Hon. T. J. Tapp, Assistant State Auditor,
dated July 9, 1931, reaching the same conclusion. We
do not believe that the lessee's reason for withhold-
ing the royalties, "the general boundary line dispute
in this area," is sufficient to suspend the interest.
The obligation of the lessee to pay royalty is uncon-
ditional and the time for payment is fixed by statute.
We understand that the pipe line companies have a
custom of withholding royalties when title is in dis-
pute. This custom may be both profitable for such
companies and convenient for lessees, but it cannot
relieve this lessee from its obligation imposed by
statute. See Wolfe v. Texas Company, 83 F. 2d 425 (10th
Cir., 1936).

This rule does not require the State's
lessee to pay royalties at its peril. As owner of
the mineral estate, such lessee is a necessary party
to any boundary litigation affecting the leased pre-
mises. As a party, it could avoid liability for inter-
est by payment into the registry of the court. Kishi
v. Humble Oil & Refining Co., 10 F. 2d 356 (5th Cir.).
If the leasehold were not affected but the right to
the royalty were in dispute, this lessee could have
interpleaded the rival claimants. If this lessee were
concerned that litigation as to other lands might af-
fect its leasehold, though not directly, it could have
prevented any liability for interest to the State by
paying the royalties under protest, as was finally
done, and, as you say, this same lessee did on other
state leases in the same field. No liability to third
parties for interest could arise after such action,
there being no written contract with such third party,
no demand by him, and no detention of any royalty money
by the lessee.

The fact that the principal sum was accepted
by the General Land Office in this and your other cases
does not discharge the obligation for unpaid "legal
interest" accruing prior to such payment. It is stated

that:

> "Where the debtor makes a payment
> equal in amount to the principal, upon
> the stipulation and agreement that it
> shall be applied in satisfaction of the
> principal, and it is so accepted and ap-
> propriated by the creditor, the principal
> is thereby extinguished and ceases to bear
> interest, leaving nothing due but the un-
> paid interest." 32 Tex. Jur. 689, 690.

> "The right to recover interest after
> the payment of the principal sum due de-
> pends upon whether interest is due by the
> terms of the contract, or whether it is
> merely implied and allowed by way of dam-
> ages in an action for the principal. If
> interest is due by the terms of the con-
> tract, the payment of the principal is no
> bar to its subsequent recovery, but if it
> is not due by the terms of the contract,
> the payment of the principal sum due is a
> bar to recovery." 100 A. L. R. 96.

Regarding "legal interest,", it is stated that:

> "Where the obligation is one that by
> statute bears interest, some courts regard
> this as an equivalent of contractual inter-
> est and, therefore, allow recovery, even
> though the principal sum has been paid,
> while others regard it in the nature of dam-
> ages, and refuse recovery after the payment
> of the principal sum." 100 A. L. R. 104.

The Texas courts have long distinguished be-
tween interest which is a matter of right and interest
which is assessed as damages. 3 Tex. Jur. 96. It is
our conclusion that payment of the principal sum does
not absolve the debtor from liability for "legal in-
terest" previously accruing by statute on a written
contract. State v. Powell, supra, sustains us in this.

Your case No. 2 involves the question of

interest on the State's 1/16th free royalty interest reserved in the sale of a tract of vacant land under the 1931 Sales Act. The oil and gas was produced and sold to pipe line companies by the fee owner, without the usual lease. The pipe line companies withheld the State's royalties for a thirteen month period ending September 30, 1944, because the Attorney General had attacked the validity of the operator's title; and in their answer, the operators had contended that the State had no right to royalties because no vacancy had existed in the first place. Interest was first demanded on October 25, 1947. The papers furnished do not show whether the pipe line companies were parties to the litigation.

The operators were not paid for the oil purchased during the pendency of the litigation.

The State has a contract relationship with purchasers of land under the 1931 Sales Act with regard to its free royalty. It likewise has a contract relationship with any mineral lessee of a tract sold under the 1931 Sales Act:

"... we think that this act, when construed in the light of the policy of this State relating to public lands and minerals as expressed in certain laws, if not directly, impliedly authorizes the landowner to act as the agent of the State in executing mineral leases thereon, and reserving to the State the free royalties described in Section 4 thereof." Wintermann v. McDonald, 129 Tex. 275, 102 S. W. 2d 167, 104 S. W. 2d 4.

The mineral development of the tract involved, from the papers you have furnished us, was by a grantee from the patentee. His deed and agreement recites the State's royalty interest but makes no specific provision as to when such royalties shall be paid. We have found no statute directly governing the time of payment of the State's "free royalty."

We will not here attempt to analyze the nature of the State's mineral interest under the 1931 Sales Act. Certain rights exist, both before and after the awardee or patentee has executed a lease. See Jones, Non-Participating Royalty, 26 Texas Law Review 569 (1948). In the absence of a specific provision by statute or lease requiring the payment of royalties at a particular time, however, the courts have held that the lessee has the implied authority and duty to sell the royalty oil to a pipe line company, and that his contract with such company regarding the time for payment of royalties will bind the royalty owner. Wolfe v. Prairie Oil & Gas Co., 83 F. 2d 434 (10th Cir., 1936). Whether such a contract binds the State, we need not determine for reasons hereafter expressed.

We have no copy of the pipe line contract in this case, but we understand that such a contract usually requires the seller to show good title. This provision has even been implied in the absence of express contract. Wolfe v. Texas Co., 83 F. 2d 425 (10th Cir., 1936). The effect of such a provision is that the pipe line company is not liable for interest on royalty oil after it notifies the royalty owners that an adverse claim has been asserted. Gulf Pipe Line Co. v. Nearan, 135 Tex. 50, 138 S. W. 2d 1065 (reversing Gulf Pipe Line Co. v. Mann, 111 S.W. 2d 335).

In the Nearan case the plaintiffs sued the pipe line company for the value of royalty oil retained for ten years during which a title controversy, to which the pipe line company was not a party, was pending and for legal interest from the delivery dates of the oil. The lease was operated by the Gulf Production Company, which delivered the oil to the Gulf Pipe Line Company. The plaintiffs had executed a division order providing in one paragraph for the payment of royalty on certain dates and in another that ". . . in case of any adverse claim of title to the oil run hereunder. . . or to the land from which it is run . . . (plaintiffs will) furnish Gulf Pipe Line Company satisfactory evidence of title, or, in case of failure to do so, to furnish satisfactory indemnity bond . . . against such

adverse claim or claims, and that the Gulf Pipe Line Company may retain the purchase price of the oil until such bond shall be furnished, or until the dispute as to ownership is settled, so as to relieve the company from all liability for oil received." Plaintiffs were requested to, but did not, furnish this bond.

The Court of Civil Appeals, 111 S. W. 2d 335, construed the division order as obligating the pipe line to pay the purchase price of the royalty oil on the delivery date. The contractual right to elect to refuse to make payment was held not to excuse interest due on the amounts so withheld, citing Art. 5070,R.C.S. The Court clearly stated the problem, saying:

"The division order was prepared by appellant and presented to appellees for their signatures, there was nothing in the original lease contract that required appellees to join in its execution. Had the division order stipulated on its face that appellant would have had the right to retain appellees' money . . . without paying interest, in this case for ten years, appellees might have refused to execute it; in that event appellant would have been compelled to pay for the oil as stipulated in the lease contract or to refuse to receive the oil under the lease. By its construction of the division order, appellant would read into it an extremely onerous obligation which was not in the contemplation of the parties when the original lease contract was executed."

The Commission of Appeals, opinion adopted by the Supreme Court, reversed on the interest point, saying that:

"The Honorable Court of Civil Appeals. . . took the view that the purchase price for the oil received became due and payable . . . on or before the 25th day of such month. . . . If there had been no adverse claims asserted to the royalty oil, there could be no doubt but

that this could be a correct conclusion. How-
ever, in the fourth section of the division
order the defendants in error agreed in case
of any adverse claim of title to the oil
run . . . to furnish to the Gulf Pipe Line
Company satisfactory evidence of title or . . .
to furnish satisfactory indemnity bond . . .
and that the Gulf Pipe Line Company may retain
the purchase price of the oil until such bond
shall be furnished or until the dispute as to
ownership is settled so as to relieve the com-
pany from all liability of oil received.

"Under the fourth section it is clear to
our minds that the parties intended to provide
for alternative provisions in which a postpone-
ment of the time when the purchaser of the oil
would have to pay for it. . . . The pipe line
company had no right to determine which claimant
owned the oil and was not obligated under the
division order to litigate the question of owner-
ship for the defendants in error with adverse
claimants. As soon as the Pipe Line Company had
notice of an adverse claim being asserted it had
the right to notify defendants in error . . .
When . . . (an) indemnity bond was refused after
reasonable demand, under the specific terms of
the division order, the Pipe Line Company had
the right to retain the purchase price of the
oil. . . . It seems to us that the purchase
price of the royalty oil under the division order
is not due and payable until the disputes as to
ownership have been settled or until a bond is
furnished. . . . The purchase price of the oil
under the facts of this case not being due and
payable until the adverse claim was extinguished
forces the conclusion that the defendants in
error are not entitled to collect interest until
the trial court's judgment was entered . . .
which settled and extinguished the dispute as to
the adverse claims. . . ."

The Court distinguished Kishi v. Humble Oil
Company, supra, on the ground that no division order
was there involved and that such case has no application

when there is a written contract between the parties.

The court excused the failure of the Pipe Line Company to tender the royalty money into registry of the court on the ground that the plaintiffs' refusal to accept the principal without interest made a formal tender unnecessary and was equivalent to a valid tender.

We do not doubt that interest can accrue as against a patentee, his assignee or lessee when such a party withholds the State's royalty after it is due and payable. But when the lease is silent as to the time for royalty payments, neither the fee owner of a tract purchased under the 1931 Sales Act, his lessee nor the pipe line company is liable for legal interest on oil sold to a pipe line company under a contract which provides that the company can withhold payments pending determination of adverse claims. In such a case, the company is liable for interest only if it fails to take the steps required of it by the contract. Gulf Pipe Line Co. v. Warren, 45 S. W. 2d 719. It is true that the Nearan case turned on the construction of a division order and that the Commissioner of the General Land Office, correctly we think, refuses to execute any division orders respecting the State's royalty. This does not, however, give us grounds for distinguishing the case. For the State to claim legal interest against the pipe line company, there must be a written contract or a statute having the effect of a contract. Here, we have no statute. The mere purchase of oil from the State's lessee creates no contractual relationship with the State. State v. Reagan County Purchasing Co., 186 S. W. 2d 128, error refused. If the State chooses to assert rights against the pipe line company, claiming as a beneficiary under the written contract (if any) between the producer and company, the State must also recognize the remaining terms of such contract. We find, therefore, that we cannot claim legal interest against this pipe line company, for without a contract there is no basis for legal interest, and with a contract, in the usual form, there is no liability for interest under these circumstances.

State v. Powell, supra, has no application to

your case No. 2 unless the pipe line company con-
tracted in writing to pay the State's royalties and
unless this contract contained no withholding pro-
vision.

On the information presented, it is our
opinion that the operator in your case No. 2 is not
liable for interest on the royalties withheld by the
pipe lines. We do not have sufficient information
to pass on the liability of the pipe line companies.

Your case No. 3 is of a Relinquishment Act
lease dated December 7, 1946, and filed for record in
the county February 28, 1947, but not tendered, with
bonus, to the General Land Office until November 24,
1947. We are giving further study to the matter of
legal interest on this transaction and will advise you
by separate opinion.

Your case No. 4 involves a lease of submerged
lands upon which the royalty for the period of July 1,
1940 to August 31, 1947, was underpaid by the lessee
and subsequently recalculated and the principal paid in
full. The documents furnished do not show the reason
for the underpayment. You do not furnish a copy of
the lease.

As to oil and gas produced and sold and for
which the lessee was paid, interest is due upon the
portion of the State's royalty which was retained by
the lessee from and after the time such royalty became
due and payable to the State by the terms of the lease
contract and the law. Wichita Petroleum Co. v. Winant,
295 F. 67 (5th Cir., 1924). For any portion of the
underpaid royalty which may have been based upon the
value of a product in the hands of a third party, and
not on the sales made by the lessee, as between the
State and its lessee, we believe that the amount bore
no interest until ascertained. See Phillips Petroleum
Company v. Johnson, 155 F. 2d 185 at 191.

You have asked us "Is the Commissioner of the
General Land Office required to collect interest on de-
linquent bonuses, rentals and royalty in the above cited
and all similar cases? If so, what interest rate should

be paid?"

Our discussion under each of your cases indicates that interest may be due the State on some items and not due the State on others. We do not think, however, that it is the duty of the Commissioner of the General Land Office to recover or collect any item of interest that may be due. This officer, upon ascertaining that interest is or may be due, may make demand for payment; and upon default, should certify the matter to the Attorney General.

When legal interest is due by statute on a written contract, it should be paid at the rate of six per cent for the period from and after the time when the principal sum is due and payable until payment of the principal sum is made and accepted, or non-payment thereof is excused. Art. 5070, R. C. S.; Gulf Pipe Line Co. v. Nearan, 135 Tex. 50, 138 S.W. 2d 1065; Gulf Pipe Line Co. v. Warren, 45 S. W. 2d 719; State v. Powell, 70 S. W. 2d 297; Phillips Petroleum Co. v. Johnson, 155 F. 2d 185; Kishi v. Humble Oil & Refining Co., 10 F. 2d 356; and Wichita Petroleum Co. v. Winant, 295 Fed. 67.

## SUMMARY

1. A Relinquishment Act lessee who withholds the State's royalties after the statutory time for payment thereof is liable to the State for legal interest until the withheld royalties are paid to the Commissioner of the General Land Office. The existence of a general boundary dispute in the area does not excuse the non-payment of such royalties, the lessee not having paid the royalties into court, interpleaded the rival claimants, or paid the royalties to the Land Commissioner under protest when due. Articles 5380-5381, R.C.S.; State v. Powell, 70 S. W. 2d 297; Opinion of July 9, 1931 to T. J. Tapp, Assistant

State Auditor.

2. The grantee of land sold under the 1931 Sales Act with reservation of free royalty to the State is not liable for legal interest on the State's royalty payments withheld by pipe line companies, where such grantee produces the oil and there is no lease contract providing a definite time for payment of the State's royalty. Art. 5070, R. C. S.

3. Pipe line companies purchasing oil from the grantee of land sold under the 1931 Sales Act with reservation of free royalty to the State are not liable to the State for legal interest on the royalty oil purchased under the usual form of purchase contract when there is an adverse claim of title. Gulf Pipe Line Co. v. Nearan, 135 Tex. 50, 138 S. W. 2d 1065; State v. Reagan County Purchasing Co., 186 S. W. 2d 128, error ref'd; State v. Powell, distinguished.

4. The lessee of submerged lands is liable to the State for legal interest on royalties which it has underpaid if the amount of such royalty is capable of ascertainment from the terms of the lease contract and the law. Such a lessee is not liable for legal interest on any portion of the underpaid royalty which may have been based on the value of a product in the hands of a third party until the value thereof had been ascertained. Art. 5070, R. C. S.

5. The acceptance by the Commissioner of the General Land Office of the principal sum after it is due and payable does not absolve the obligor from the payment of

legal interest theretofore accruing.

6. When legal interest is due to the State, it should be paid at the rate of six per cent per annum for the period from and after the time the principal sum is due and payable until payment of the principal sum is made and accepted. Art. 5070, R. C. S.

7. It is the duty of the Land Commissioner to ascertain when interest is due upon delinquent bonus, rentals and royalty and to make demand therefor. If payment is refused or default occurs, such facts should be certified to the Attorney General.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By        Ben H. Rice, III
             Assistant

BHR:bt
Encls.

APPROVED

Price Daniel
ATTORNEY GENERAL